KRISTEN CLARKE, Assistant Attorney General
REBECCA B. BOND, Chief
KATHLEEN P. WOLFE, Special Litigation Counsel
KEVIN J. KIJEWSKI, Deputy Chief
CHERYL ROST, Trial Attorney (NJBN 020982011)
MATTHEW FAIELLA, Trial Attorney (NYRN 4437711)
SARAH GOLABEK-GOLDMAN, Trial Attorney (DCRN 1047833)
U.S. Department of Justice
950 Pennsylvania Ave., NW- 4CON
Washington, DC 20530
Telephone: (202) 616-5311
Fax: (202) 307-1197
cheryl.rost@usdoj.gov
matthew.faiella@usdoj.gov
sarah.golabek-goldman@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7332
Fax: (415) 436-6748
david.devito@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-8735 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | DEMAND FOR JURY TRIAL |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |

Plaintiff United States of America brings this action to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulation, 49 C.F.R. Part 37, against Defendant Uber Technologies, Inc. ("Defendant" or "Uber"). The ADA

COMPLAINT                              1

prohibits discrimination based on disability by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce. 42 U.S.C. § 12184(a). The United States alleges as follows:

## BACKGROUND

1. Uber discriminates against passengers with disabilities and potential passengers with disabilities in violation of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. Part 37, through its policies and practices of imposing "wait time" fees on passengers with disabilities who, because of disability, require more time than that allotted by Uber to board the vehicle.

2. In violation of the ADA, Uber has failed to (1) ensure adequate vehicle boarding time for passengers with disabilities; (2) ensure equitable fares for passengers with disabilities; and (3) make reasonable modifications to its policies and practices of imposing wait time fees as applied to passengers who, because of disability, require more time to board the vehicle. *See* 49 C.F.R. §§ 37.167(i), 37.29(c), and 37.5(d), (f); 42 U.S.C. § 12184(a), (b)(2)(A); *see also* 28 C.F.R. § 36.302 (incorporated by reference in 49 C.F.R. § 37.5(f)).

3. The Attorney General has commenced this action based on a determination that Uber has engaged in a pattern or practice of discrimination and a determination that a person or group of persons has been discriminated against, and that such discrimination raises an issue of general public importance. 42 U.S.C. § 12188(b)(1)(B). The United States seeks declaratory and injunctive relief, monetary damages, including compensatory and emotional distress damages, and a civil penalty against Uber.

4. Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In enacting the ADA, Congress found that discrimination against individuals with disabilities persists in transportation. *See* 42 U.S.C. § 12101(a)(3).

5. The ADA's prohibition against discrimination in specified public transportation services provided by private entities, such as Uber, is essential to furthering the ADA's purpose "to invoke the

sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4).

### **PARTIES**

6. Plaintiff is the United States of America.

7. Defendant Uber is a Delaware corporation with its principal place of business at 1515 3rd Street, San Francisco, California 94158.  In this complaint, "Uber" refers to Uber Technologies, Inc. and any of its subsidiary companies or operationally distinct segments that are responsible for Uber's provision of transportation services.  *See* 49 C.F.R. § 37.37(f) (nondiscrimination requirements apply to any subsidiary company or operationally distinct segment of a parent company that is primarily engaged in the provision of transportation services).

8. Uber is a for-profit company that provides transportation services to individuals throughout the United States.  Passengers request transportation through Uber's mobile software application, and Uber arranges rides between passengers and a fleet of drivers.

9. While Uber does not own all the vehicles in this fleet, Uber maintains control over vehicle specifications, driver qualifications, the amount each passenger must pay, and the general ride experience for each trip.

10. As Uber and other similar providers have gained popularity over traditional taxi services as the primary option for on-demand transportation, Uber plays an important role in ensuring independence for countless people with disabilities who choose to – or simply must – rely on its services to travel.

11. Uber provides "specified public transportation services," which the ADA defines as "transportation by . . . any [] conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis."  42 U.S.C. § 12181(10); *see also* 49 C.F.R. § 37.3.

12. Uber is a private entity primarily engaged in the business of transporting people, and its operations affect commerce.  *See* 42 U.S.C. §§ 12181(1), (6), 12184(a) and 49 C.F.R. § 37.3.

COMPLAINT 3

13. Uber is a private entity that provides taxi and other transportation services that involve calling for a vehicle and a driver to take an individual to a place or places. *See* 49 C.F.R. § 37.29; *see also* 49 pt. 37, app. D § 37.29.

14. Uber provided 2.3 billion trips in the United States from 2017-2018, including more than 3.1 million individual trips per day.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action under the ADA, 42 U.S.C. § 12188(b)(1)(B), and 28 U.S.C. §§ 1331 and 1345, because it involves claims arising under federal law and is commenced by the United States.

16. The Court may grant declaratory relief and other necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202, and may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. § 12188(b)(2).

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Uber operates, resides and has its principal place of business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

18. Divisional Assignment. Assignment to the San Francisco or Oakland Division is proper under Civil L.R. 3-2(c) because Uber is headquartered in San Francisco and a substantial part of the events or omissions that give rise to the claims occurred therein.

## FACTS

**Uber's Policies and Practices of Imposing Wait Time Fees on Passengers Who, Because of Disability, Require More Time to Board the Uber Vehicle**

19. In April 2016, Uber launched a new policy of charging passengers wait time fees in limited locations throughout the United States.

20. Under this policy, Uber charges wait time fees starting two minutes after the Uber vehicle arrives at the pickup location, and the fees are charged until the vehicle begins its trip.

COMPLAINT 4

21. Uber later expanded its policy to apply to all cities in the United States where Uber operates.

22. Uber has publicly stated that the amount of the wait time fee charged depends on the passenger's city and the category of Uber service the passenger is taking.

23. The two-minute window before which wait time fees are charged begins when Uber determines via the global positioning system, or GPS, that the driver has arrived at the pickup location.

24. Uber drivers do not have discretion related to wait time fees to indicate when they have arrived at the pick-up location.

25. Uber drivers do not have discretion to waive a wait time fee.

26. Many passengers with disabilities require more than two minutes to board or load into a vehicle for various reasons, including because they may use mobility aids and devices such as wheelchairs and walkers that need to be broken down and stored in the vehicle or because they simply need additional time to board the vehicle.

27. Passengers with disabilities who take longer than two minutes to board or load into the vehicle are charged a wait time fee regardless of the reason that it takes them longer than two minutes to begin the trip.

28. Upon request, Uber has issued wait time fee refunds to some passengers with disabilities.

29. Uber, however, has also denied wait time fee refunds to some passengers with disabilities even after being informed that the fees were charged because of their disabilities.

**Uber Discriminates Against Passengers and Potential Passengers Who, Because of Disability, Are Charged or Are Aware That They Would Be Charged Wait Time Fees**

30. Uber's policies and practices of charging wait time fees based on disability have impacted many passengers and potential passengers with disabilities throughout the country, including:

<u>Passenger A</u>

31. Passenger A is a 52-year-old woman who lives in Miami, Florida.

32. In 2012, Passenger A sustained spinal cord injuries that resulted in quadriplegia.

COMPLAINT 5

33. Because she does not walk, Passenger A uses a manual wheelchair, which she propels by pushing on round bars that surround the wheel. Her manual wheelchair also has a handle on the back that can be pushed by another person.

34. A person can fold up Passenger A's manual wheelchair by gripping the front and the back of the seat with each hand and pulling up so that the wheelchair collapses like an accordion. When collapsed, her wheelchair can be stored in the trunk of a standard vehicle.

35. In May 2020, Passenger A relocated to Louisville, Kentucky to participate in a yearlong clinical study and rehabilitation program for spinal cord injuries at the University of Louisville. She moved to an apartment in downtown Louisville, which is approximately five city blocks away from the rehabilitation center.

36. During her year in Louisville, Passenger A received full-time nursing assistance from nurses who helped her with personal care, as well as transferring to and from her wheelchair and storing her wheelchair in the trunk of a vehicle when she took car trips.

37. Passenger A relied on Uber for transportation from her apartment to the rehabilitation facility and back home again following her appointment.

38. Passenger A took an Uber vehicle to and from her rehabilitation appointments approximately ten times each week.

39. Because her rehabilitation appointment took place at the same time every day, Passenger A developed a consistent routine for requesting an Uber vehicle. Fifteen minutes before her appointment time when she was ready to leave, she went to the lobby of her apartment building or waited in front of the building and requested an Uber vehicle from her phone.

40. When the Uber vehicle arrived, Passenger A promptly began the process of boarding the vehicle. Her nursing assistant used a sliding board to help her transfer and slide into the backseat of the vehicle. The assistant then assisted with moving Passenger A's legs into the vehicle and buckling the safety belt over her. The assistant next collapsed Passenger A's wheelchair and stored it in the trunk of the Uber vehicle. On average, it took Passenger A at least five minutes from start to finish to board an Uber vehicle.

41. In August 2020, Passenger A first noticed that Uber was consistently charging her wait time fees for her daily rides.

42. Passenger A then examined all of her past Uber receipts and realized she had been charged a wait time fee for every ride she had taken with Uber since she relocated to Louisville in May 2020.

43. Because she had limited options for getting to her daily rehabilitation appointments, Passenger A continued to take Uber every day and continued to be charged wait time fees for every ride she took there.

44. Passenger A attempted to request a refund of the wait time fees from Uber through a variety of means. When she could not locate a phone number to directly contact Uber, she posted a message on her Twitter account using Uber's Twitter handle (@Uber). Passenger A also sent emails to Uber's customer service email account.

45. An Uber employee eventually responded to Passenger A and told her that the wait time fees were automatic and therefore Uber could not do anything to prevent them from being charged if Passenger A exceeded the two-minute time limit for any reason.

46. Passenger A has not received a refund for any of the wait time fees she has been assessed.

47. Passenger A felt angry and upset that Uber has charged her wait time fees for her daily rides to her rehabilitation appointments. Uber's refusal to refund her money or to change its wait time fee policy makes Passenger A feel like a second-class citizen.

<u>Passenger B</u>

48. Passenger B is a 34-year-old man with cerebral palsy. He formerly lived in Philadelphia, Pennsylvania. In May 2019, Passenger B moved to Queens, a borough of New York City, New York, to accept a new job.

49. Although he can walk short distances, Passenger B primarily uses a manual wheelchair for mobility purposes. The wheelchair can be collapsed and folded up when it needs to be stored in the trunk of a car.

COMPLAINT 7

50. Prior to his relocation to New York in May 2019, Passenger B frequently used Uber for his transportation needs because he does not drive. Passenger B relied on Uber to provide transportation to visit friends and family, to commute to work occasionally, and to take him to social and leisure activities.

51. Passenger B requests an Uber vehicle only when he is ready to be picked up and begin his trip. However, it takes Passenger B longer than two minutes to board the Uber vehicle because he must fold up his wheelchair and store it in the vehicle of the trunk, which often requires the driver's assistance.

52. In or around September 2018, Passenger B noticed on the receipts he received from Uber that he had been charged a wait time fee on multiple occasions.

53. Passenger B reviewed his receipts and determined that Uber had charged him a wait time fee nearly every time he had used Uber since January 2018.

54. When Passenger B contacted Uber's customer service about the wait time fees, Uber initially refunded the fees he had been charged. However, after he received a certain amount of refunds, a customer service associate informed him that he had reached the maximum amount of refunds and Uber would no longer issue him any additional refunds.

55. Passenger B felt angry, frustrated, and upset when he found out that Uber had charged him wait time fees because of his disability and refused to provide refunds after previously providing refunds.

56. Similar to Passengers A and B, other individuals with disabilities throughout the country have likewise been discriminated against by Uber by being charged wait time fees because of their disabilities.

57. Other potential Uber passengers with disabilities know of Uber's wait time fees and will not use Uber because of those fees.

# CAUSE OF ACTION
## Violation of Title III of the Americans with Disabilities Act

58. The United States re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

59. Uber discriminates against passengers with disabilities and potential passengers with disabilities, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. Part 37, through its policies and practices of imposing wait time fees on passengers with disabilities who, because of disability, require more time to board the vehicle.

60. Uber's violations of the ADA amount to a pattern or practice of discrimination. Its discrimination against a person or group of persons raises an issue of general public importance. Such discrimination includes Uber's failure to:

   a. Ensure adequate boarding time for passengers with disabilities, in violation of 42 U.S.C. § 12184(a) and 49 C.F.R. § 37.167(i);

   b. Ensure equitable fares for transporting passengers with disabilities, in violation of 42 U.S.C. § 12184(a) and 49 C.F.R. §§ 37.5(d), 37.29(c);

   c. Make reasonable modifications to its policies, practices, and procedures of charging a wait time fee as applied to passengers who, because of disability, require more time to board the vehicle. *See* 42 U.S.C. § 12184(a), (b)(2)(A); 49 C.F.R. § 37.5(f); *see also* 28 C.F.R. § 36.302 (incorporated by reference in 49 C.F.R. § 37.5(f)).

61. Passengers with disabilities and potential passengers with disabilities have been harmed and continue to be harmed by Uber's alleged violations of the ADA, and are entitled to monetary damages, including compensatory and emotional distress damages. 42 U.S.C. § 12188.

# PRAYER FOR RELIEF

Plaintiff United States prays this Court:

A. Grant judgment in favor of the United States and declare that Uber's actions, policies, and practices, as alleged in this complaint, violate Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. Part 37;

B.  Enjoin Uber, its officers, agents, employees, drivers, and all others in concert or in participation with it, from engaging in discrimination against individuals with disabilities, and from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. Part 37;

C.  Order Uber to modify its policies, practices, and procedures, including its wait time fee policy, to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. Part 37;

D.  Order Uber to provide ADA training to its officers, agents, employees, drivers, and all others in concert or in participation with it;

E.  Award monetary damages, including compensatory damages for emotional distress and other injuries, to persons aggrieved by Uber's actions or failures to act, pursuant to 42 U.S.C. § 12188(b)(2)(B);

F.  Assess a civil penalty against Uber pursuant to 42 U.S.C. § 12188(b)(2)(C), to vindicate the public interest; and

G.  Order such other appropriate relief as the interests of justice may require, together with the United States' costs and disbursements in this action.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues.

Dated: November 10, 2021

Respectfully submitted,

| | |
|---|---|
| /s/Stephanie M. Hinds<br>STEPHANIE M. HINDS<br>Acting United States Attorney | /s/Kristen Clarke<br>KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | REBECCA B. BOND<br>Chief |
| /s/David M. DeVito<br>DAVID M. DEVITO<br>Assistant United States Attorney | /s/Cheryl Rost<br>KATHLEEN P. WOLFE<br>Special Litigation Counsel<br>KEVIN J. KIJEWSKI<br>Deputy Chief<br>CHERYL ROST<br>MATTHEW FAIELLA<br>SARAH GOLABEK-GOLDMAN<br>Trial Attorneys<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice |

COMPLAINT 11