DEBO P. ADEGBILE (*pro hac vice*)
debo.adegbile@wilmerhale.com
ALAN E. SCHOENFELD (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 937-7294
Facsimile:   (212) 230-8888

JOSHUA A. VITTOR
CA Bar No. 326221
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5375
Facsimile:  (213) 443-5400

*Attorneys for Defendant Uber Technologies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                    Defendant. | Case No. 3:21-cv-08735-WHA<br><br>**UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 24, 2022<br>Courtroom: 12<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION...................................................................................................1

STATEMENT OF RELIEF REQUESTED....................................................................1

STATEMENT OF ISSUES TO BE DECIDED .............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND...............................................................................2

III.    LEGAL FRAMEWORK .....................................................................................3

IV.     ARGUMENT .......................................................................................................4

        A.      The ADA Does Not Prohibit Generally Applicable, Time-Based Fees Like
                The Wait Time Fee .................................................................................5

                1.      The complaint alleges no facts to support the claim that Uber fails
                        to provide adequate time for riders with disabilities to board. ...................5

                2.      The wait time fee is not "special" or "higher" for people with
                        disabilities. ...................................................................................7

                        i.      Controlling DOT guidance permits charging people with
                                and without disabilities the same fees for the same services...........8

                        ii.     DOT's controlling guidance permitting identical fees for
                                identical services is consistent with the broader ADA. ................10

                3.      The ADA does not require modification of Uber's wait time fee
                        policy...........................................................................................11

                        i.      The specifically applicable DOT rules that permit generally
                                applicable charges control here.......................................................11

                        ii.     DOJ's published guidance explicitly permits charging time-
                                based fees to individuals with disabilities......................................12

        B.      The Court Should Dismiss The Government's Claims On Behalf Of
                Individuals Who Never Requested A Refund From Uber And So Suffered
                No Injury Under The ADA ......................................................................15

        C.      The Complaint Does Not Plausibly Allege That Uber Is "Primarily
                Engaged in the Business of Transporting People"...................................17

CONCLUSION...........................................................................................................19

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alaska v. Federal Subsistence Board*, 544 F.3d 1089 (9th Cir. 2008) ...........................................4

*Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531 (W.D. Pa. 2013)..................................................14

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666 (9th Cir. 2010) ........................................................................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................3

*Auer v. Robbins*, 519 U.S. 452 (1997) ..........................................................................................9

*Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988).................................................4

*Bragdon v. Abbott*, 524 U.S. 624 (1998) .......................................................................................4

*Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447 (S.D.N.Y. 2019) ...................................16

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) ........................................16

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014)..................................................................................................12

*Crawford v. Uber Technologies, Inc.*, 2021 WL 3810259 (N.D. Cal. Aug. 26, 2021) .................................................................................................................17

*Disabled in Action of Pennsylvania v. National Passenger R.R. Corp.*, 418 F. Supp. 2d 652 (E.D. Pa. 2005) ..............................................................................7, 10, 12

*Equal Rts. Ctr. v. Uber Technologies, Inc.*, 525 F. Supp. 3d 62 (D.D.C. 2021)..........................17

*Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019).................................................................................7

*Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004)..................................15

*Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014).............................................................4

*Independent Living Resource Center San Francisco v. Lyft, Inc.*, 2020 WL 6462390 (N.D. Cal. Nov. 3, 2020)......................................................................17

*Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020)...................................15

*Love v. Ashford San Francisco II LP*, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021) ...................................................................................................................9

*Marshall v. Ross Stores, Inc.*, 2020 WL 8173022 (C.D. Cal. Oct. 14, 2020).........................15, 16

*Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) ..............................................................................................................................14

*Robishaw v. The Providence Probate Court*, 206 F. Supp. 3d 723 (D.R.I. 2016).........................14

*Rutherford v. Evans Hotels, LLC*, 2020 WL 5257868 (S.D. Cal. Sept. 3, 2020) ...................16, 17

*Scherr v. Marriott International, Inc.*, 703 F.3d 1069 (7th Cir. 2013) ..........................................12

*Shaywitz v. American Board of Psychiatry & Neurology*, 848 F. Supp. 2d 460 (S.D.N.Y. 2012) ...........................................................................................................15

*Szwanek v. Jack in the Box, Inc.*, 2020 WL 5816752 (N.D. Cal. Sept. 30, 2020) ........................10

*Szwanek v. Jack in the Box, Inc.*, 2021 WL 5104372 (9th Cir. Nov. 3, 2021) .................10, 11, 14

*Toomer v. City Cab Co.*, 2005 WL 67091 (D. Utah Jan. 10, 2005) .............................................12

*United States v. National Amusements, Inc.*, 180 F. Supp. 2d 251 (D. Mass. 2001)....................12

*Village of Bedford Park v. Expedia, Inc.*, 876 F.3d 296 (7th Cir. 2017) ......................................18

*West v. Moe's Franchisor, LLC*, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015)...............................9

**STATUTES, RULES, AND REGULATIONS**

28 C.F.R. § 35.130 ...................................................................................................................10

28 C.F.R. § 36.301 ............................................................................................................10, 13

28 C.F.R. § 36.302 ............................................................................................................11, 13

28 C.F.R. pt. 36, App. C ...............................................................................................4, 12, 13

42 U.S.C. § 12182 .....................................................................................................................3

42 U.S.C. § 12184 ............................................................................................................ *passim*

42 U.S.C. § 12186 .....................................................................................................................3

42 U.S.C. § 12188 ...............................................................................................................15, 16

49 C.F.R. § 37.167 .........................................................................................................4, 5, 6, 7

49 C.F.R. § 37.29 ............................................................................................................. *passim*

49 C.F.R. § 37.5 ............................................................................................................... *passim*

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

Case No. 3:21-cv-08735-WHA

1   49 C.F.R. pt. 37 ............................................................................................... 1, 3, 9

2   49 C.F.R. pt. 37, App. D ..................................................................................... *passim*

3   **OTHER AUTHORITIES**

4   Nondiscrimination on the Basis of Disability by Public Accommodations and in
5        Commercial Facilities, 56 Fed. Reg. 35544 (July 26, 1991) ............................... 13

6   U.S. Department of Transportation Federal Transit Administration, Americans
         with Disabilities Act (ADA) Guidance § 6.4 (Nov. 4, 2015),
7        https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/Final_FTA_ADA_
8        Circular_C_4710.1.pdf .............................................................................................. 6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   UBER TECHNOLOGIES, INC.'S                                       Case No. 3:21-cv-08735-WHA
     NOTICE OF MOTION & MOTION TO DISMISS;
     MEMORANDUM AND POINTS OF AUTHORITIES
     IN SUPPORT THEREOF

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, February 24, 2022, at 8:00 a.m., or as soon thereafter as this matter can be heard, in Courtroom 12 of the U.S. District Court for the Northern District of California, before the Honorable William Alsup, defendant Uber Technologies, Inc. will and hereby does move the Court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for this motion, as set forth in detail below, are that the United States has failed to state a claim upon which relief can be granted because charging wait time fees does not violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12184, or its implementing regulations, 49 C.F.R. part 37.

## STATEMENT OF RELIEF REQUESTED

The government's complaint should be dismissed in its entirety and with prejudice for failure to state a claim because the challenged wait time fee complies with the applicable regulations and agency guidance implementing the Americans with Disabilities Act.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the complaint plausibly states a claim for violation of the Americans with Disabilities Act (ADA) where the conduct alleged complies with the statute and applicable rules?

2. Whether the United States can pursue relief under the ADA on behalf of individuals who never sought a modification of the wait time fee policy?

3. Whether the complaint plausibly alleges that Uber is "primarily engaged in the business of transporting people" under the ADA?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Uber's technology, and the hard work of independent drivers and commercial fleets that use it, have enabled more people to move more freely and efficiently than ever before. Those people include persons with disabilities, who for many years were limited to paratransit and other options that did not fully meet their needs. Uber has backed up its commitment to the disabled

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

community with real dollars, investing tens of millions annually to support drivers and fleets who provide wheelchair accessible vehicle trips to riders who use motorized wheelchairs in some of the largest cities in the United States.  In short, as the government correctly observes, "Uber plays an important role in ensuring independence for countless people with disabilities."  Compl. ¶ 10.

Notwithstanding Uber's efforts, the United States sued Uber, alleging claims under the Americans with Disabilities Act (ADA) and challenging Uber's policy of charging riders a fee when drivers wait for more than two minutes after arriving at the rider's designated pickup location.  As the government acknowledges, the same wait time fee applies to any rider who takes more than two minutes to board the driver's vehicle, no matter the reason.  The longer drivers wait for riders to board, the less time they have to earn money offering their services to other riders.  That is true no matter why the driver had to wait.  The government alleges, however, that charging this generally applicable, time-based fee to riders who may require more than two minutes to board because of a disability violates the ADA.

It does not.  Authoritative agency interpretations of the governing regulations allow transportation services to charge people with and without disabilities the same fees for the same services, including time-based fees.  The wait time fee is one such generally applicable, time-based fee.  Contrary to the government's theories, the fee does not leave disabled riders with insufficient time to board their ride, does not impose unique fees on people with disabilities that people without disabilities do not also pay for the same service, and does not require modification because it is nondiscriminatory.  The government's complaint should be dismissed.

## II.    FACTUAL BACKGROUND

Uber is a technology company that operates smartphone applications (apps) for the ridesharing industry.  *See* Compl. ¶ 8.  Independent, third-party drivers looking to provide rides for a profit use the Uber app to network with riders looking to hire a driver.  Riders engage drivers via the app to pick them up and drive them to their destinations.  *Id.*  Uber's service of connecting drivers to riders has enhanced access to transportation services across the United States.  *See id.* ¶ 10.

1   As alleged in the complaint, Uber "charges wait time fees starting two minutes after the

2   Uber vehicle arrives at the pickup location, and the fees are charged until the vehicle begins its

3   trip." Compl. ¶ 20.[1] Uber automatically charges wait time fees to all riders whenever their driver

4   waits for more than two minutes, regardless of the reason.  *See, e.g.*, *id.* ¶ 19 (alleging "a new

5   policy of charging passengers wait time fees").  Although not legally required to do so, Uber has

6   a policy of generally refunding wait time fees if the rider contacts Uber to explain that the delay

7   was due to a disability, as many riders have done.  *See id.* ¶¶ 28-29.

8   **III.   LEGAL FRAMEWORK**

9   As relevant to the government's complaint, the ADA prohibits discrimination "on the basis

10  of disability in the full and equal enjoyment of specified public transportation services provided

11  by a private entity that is primarily engaged in the business of transporting people and whose

12  operations affect commerce."  42 U.S.C. § 12184(a).  Congress instructed the Department of

13  Transportation (DOT) to promulgate regulations to implement this directive.  *Id.* § 12186(a)(1);

14  *see also* 49 C.F.R. pt. 37.  The same section—42 U.S.C. § 12184—further defines prohibited

15  discrimination to include failing to "make reasonable modifications consistent with those required

16  under section 12182(b)(2)(A)(ii)."  42 U.S.C. § 12184(b)(2)(A).  Section 12182(b)(2)(A)(ii) in

17  turn requires places of public accommodation to make certain "reasonable modifications" that are

18  "necessary" to provide services to individuals with disabilities.  *Id.* § 12182(b)(2)(A)(ii).  That

19  section of the ADA—42 U.S.C. § 12182—is enforced by the Department of Justice (DOJ), which

20  Congress charged with promulgating regulations governing places of public accommodation.  42

21  U.S.C. § 12186(b); *see also* 28 C.F.R. pt. 36.  Mirroring 42 U.S.C. § 12184(a)'s incorporation of

22  § 12182(b)(2)(A)(ii), DOT has incorporated DOJ's reasonable modification regulations into its

23  own DOT regulations enforcing the transportation services provisions of the ADA.  *See* 49 C.F.R.

24  § 37.5(f).

25

26      [1] Although many of the government's allegations and characterizations are inaccurate, for
27  purposes of this motion only, Uber treats the complaint's factual allegations (although not its legal
    conclusions) as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

28

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;                                   3:21-cv-08735-WHA
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

Both DOT and DOJ have published appendices that interpret their ADA-implementing regulations. *See* 49 C.F.R. pt. 37, App. D (DOT appendix); 28 C.F.R. pt. 36, App. C (DOJ appendix). These appendices are "intended to be used as definitive guidance concerning the meaning and implementation of these provisions." 49 C.F.R. pt. 37, App. D; *see also* 28 C.F.R. pt. 36, App. C (providing "guidance to ADA regulation[s]" with "section-by-section analysis and response to comments"). DOT's and DOJ's authoritative, published interpretations of their regulations are "entitled to controlling weight unless … plainly erroneous or inconsistent with the regulation." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) (internal quotation marks omitted); *see also Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (describing deference due "the administrative guidance issued by the Justice Department" in ADA context). By contrast, "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988). Courts "do not afford … deference to litigation positions unmoored from any official agency interpretation." *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008).

## IV. ARGUMENT

The government offers three theories for why Uber's wait time fee violates the ADA. None has merit.

*First*, the government claims that Uber fails to ensure that riders with disabilities have adequate time to board vehicles. Compl. ¶ 60(a) (citing 42 U.S.C. § 12184(a) and 49 C.F.R. § 37.167(i)). That theory fails because the complaint has not alleged a single fact suggesting that charging a wait time fee denies riders enough time to board a vehicle.

*Second*, the government claims that the wait time fee violates 49 C.F.R. § 37.5(d) and § 37.29(c), Compl. ¶ 60(b), which prohibit "impos[ing] special charges … on individuals with disabilities," 49 C.F.R. § 37.5(d), and charging people with disabilities "higher fares or fees" than people without disabilities, *id.* § 37.29(c). That theory fails because the complaint does not allege any special or higher fees, and authoritative DOT guidance makes clear that the ADA allows charging generally applicable fees for the same services.

*Third*, the government claims that Uber fails to reasonably modify its wait time fee policy for people with disabilities. Compl. ¶ 60(c) (citing 42 U.S.C. § 12184(b)(2)(A)(ii) and its implementing regulations). That theory fails because Uber is under no statutory obligation to modify a nondiscriminatory policy that controlling regulations expressly permit, and because authoritative DOJ guidance specifically provides that businesses that charge on the basis of time do not need to waive those charges for people with disabilities who require more time.

The Court should dismiss the government's ADA claim under each theory. But even if each of these theories did not fail as a matter of law, the government cannot state a claim on behalf of individuals who never requested a modification to the wait time fee policy, as it seeks to do here. *See* Compl. ¶ 61 (bringing claims on behalf of "potential passengers"). Uber could not have discriminated against individuals who never downloaded or used the Uber app, never identified themselves to Uber as disabled, or never requested a refund of a wait time fee that they claimed to incur because of their disability. Uber could not have provided reasonable modifications, or refunded generally applicable fees that are purportedly discriminatory, if the rider never took any of these measures.

### A. The ADA Does Not Prohibit Generally Applicable, Time-Based Fees Like The Wait Time Fee

#### 1. The complaint alleges no facts to support the claim that Uber fails to provide adequate time for riders with disabilities to board.

The government first claims that wait time fees violate 49 C.F.R. § 37.167(i). Compl. ¶ 60(a). Section 37.167(i) addresses service requirements and nowhere addresses fees. It requires only that transportation providers ensure "that adequate time is provided to allow individuals with disabilities to complete boarding or disembarking from the vehicle." 49 C.F.R. § 37.167(i). Consistent with its plain text, the rule prohibits drivers from leaving before riders with disabilities can get into or out of the vehicle. DOT's authoritative guidance to this rule is consistent with that straightforward reading: The rule prohibits "very rapidly closing doors on the vehicles before individuals with disabilities (who may move more slowly through crowds in the vehicle or

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

platform than other persons) have a chance to get on or off the vehicle."  49 C.F.R. pt. 37, App. D. Other DOT guidance interpreting this provision likewise focuses on ways "to ensure that adequate boarding and alighting time is provided," such as by standardizing the location of accessible rail cars so riders do not "wait in a distant location and not have sufficient time to move down the platform to board."  U.S. Department of Transportation Federal Transit Administration, Americans with Disabilities Act (ADA) Guidance § 6.4 (Nov. 4, 2015).[2]

The government alleges no facts suggesting that Uber failed to comply with this requirement.  The complaint does not allege that drivers denied riders with disabilities adequate time to enter or exit their rides, much less that they did so due to the challenged wait time fees.  It does not allege that either of the two allegedly aggrieved individuals was denied adequate time. *See* Compl. ¶¶ 31-55.  To the contrary, the government acknowledges that drivers provided both individuals with time to board. *Id.* ¶¶ 40, 51.  Far from plausibly showing that Uber's wait time fee policy violates § 37.167(i), these allegations indicate that the policy encourages drivers to wait for all riders by compensating them for the time that they spend waiting.

The complaint makes clear that the government's objection is about wait time *fees*, not about providing adequate time for riders to board.  Charging wait time fees does not violate § 37.167(i).  Section 37.167(i) says nothing about fees. *None* of the provisions of § 37.167 says anything about fees.  All are concerned with making transportation services physically accessible and practically usable for people with disabilities. *See, e.g.*, 49 C.F.R. § 37.167(b)(1) (requiring stop announcements "sufficient to permit individuals with visual impairments or other disabilities to be oriented to their location"); *id.* § 37.167(g) (requiring that riders be permitted to use "a lift to disembark" where feasible); *id.* § 37.167(j) (outlining process for clearing wheelchair-secure seating).  By contrast, other rules—on which the government elsewhere relies, *see* Compl. ¶ 60(b)—expressly address when and how transportation services can charge fees consistent with

---

[2]  This DOT circular is available online at https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/Final_FTA_ADA_Circular_C_4710.1.pdf (last visited Jan. 13, 2022).

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

the ADA.  *See* 49 C.F.R. § 37.5(d) (prohibiting "impos[ing] special charges ... on individuals with disabilities"); § 37.29(c) (prohibiting "charging higher fares or fees for carrying individuals with disabilities").

It is implausible to read § 37.167(i) as governing fees; it is completely silent on that topic while other rules (further discussed below) expressly address such fees.  *See Flores v. Barr*, 934 F.3d 910, 917 (9th Cir. 2019) (holding that the "more specific regulatory provision ... governs, not the general").  Yet the complaint contains no material allegations about any Uber policy or action apart from the wait time fee.  The government therefore has not stated a claim for violation of § 37.167(i).

### 2.    The wait time fee is not "special" or "higher" for people with disabilities.

The government next claims that charging wait time fees violates the ADA rules that do cover fees: 49 C.F.R. § 37.5(d), which prohibits all covered entities from "impos[ing] special charges ... on individuals with disabilities, including individuals who use wheelchairs, for providing services required by this part or otherwise necessary to accommodate them," and § 37.29(c), which specifically prohibits "[p]rivate entities providing taxi service" from "charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons."  *See* Compl. ¶ 60(b).[3]  These rules prohibit charging persons with disabilities "extra fees" above and beyond those charged to people without disabilities for the same service. *See Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652, 658 (E.D. Pa. 2005) (rejecting ADA claim challenging fees that were consistent with specifically applicable DOT rules).

The complaint fails to state a claim for violation of either provision for a straightforward reason:  Uber charges *everyone* a fee if they require the driver to wait more than two minutes, no matter the reason.  *See e.g.*, Compl. ¶ 20.  That includes, for example, riders who take more than

---

[3] Uber disputes that the government has plausibly alleged that Uber is a transportation service provider, much less a private taxi service under the ADA.  *See infra* Section IV.C.  But the government would fail to state a claim even if these rules did apply to Uber.

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

two minutes to bring their luggage to the curb and put it in the trunk.  Fees that people both with and without disabilities must pay are neither "special" nor "higher," nor does the government allege that the wait time fee charged to a person with a disability is different from that charged to a person without a disability.  Such generally applicable fees for the same services are not discriminatory and do not violate 49 C.F.R. § 37.5(d) or § 37.29(c).

### i. Controlling DOT guidance permits charging people with and without disabilities the same fees for the same services.

DOT's "definitive guidance" to the rules at issue forecloses the government's claim.  49 C.F.R. pt. 37, App. D.  DOT explains that the "prohibition on special charges" in § 37.5(d) "applies to charges for service to individuals with disabilities that are higher than charges for the same or comparable services to other persons."  49 C.F.R. pt. 37, App. D.  DOT gives this example:

> If a taxi company charges $1.00 to stow luggage in the trunk, it cannot charge $2.00 to stow a folding wheelchair there.  This provision does not mean, however, that a transportation provider cannot charge nondiscriminatory fees to riders with disabilities.  The taxi company in the above example can charge a rider $1.00 to stow a wheelchair in the trunk; it is not required to waive the charge.

*Id.*  DOT provides the same guidance for § 37.29(c):

> It would be discrimination to charge a higher fee or fare for carrying a person with a disability than for carrying a non-disabled rider, or a higher fee for stowing a wheelchair than for stowing a suitcase.  (Charging the same fee for stowing a wheelchair as for stowing a suitcase would be proper, however.)

49 C.F.R. pt. 37, App. D.  These illustrations confirm that while transportation services may not charge *more* for the same service to people with disabilities than they charge people without disabilities, they may charge *the same fee* for the same service to people with and without disabilities.  In DOT's example, because the "stowing fee" is generally applicable, it does not violate the ADA.  That is so even though riders who always use wheelchairs will always have to pay a fee to stow their wheelchair, while riders who do not use wheelchairs can choose whether to pay a fee by choosing whether to bring a suitcase.  Charging a wait time fee to all riders, including those who may need more time due to a disability, is no different than charging all riders a stowage fee, including riders who use a wheelchair due to a disability.

DOT's interpretation of § 37.5(d) and § 37.29(c) is entitled to deference.  *See Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 673 n. 2 (9th Cir. 2010) (courts "must defer to an agency's interpretation of its own regulation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation'" (alterations incorporated)).  DOT's guidance in its published appendix "explains the Department's construction and interpretation of provisions of 49 CFR pt. 37," 49 C.F.R. pt. 37, App. D, and so "reflect[s] the agency's fair and considered judgment on the matter in question," *Auer v. Robbins*, 519 U.S. 452, 462 (1997).  Private parties "should be able to rely on the plain import of [such] commentary." *Goddard*, 603 F.3d at 673.

Courts therefore routinely dismiss ADA suits that seek to compel business practices or modifications that are contrary to the regulatory guidance issued by the implementing agency.  *See, e.g., Goddard*, 603 F.3d at 672-73 (affirming dismissal of ADA claim seeking to require movie theater to screen movies with open captioning where agency guidance provided that "[m]ovie theaters are not required … to present open-captioned films"); *Love v. Ashford San Francisco II LP*, 2021 WL 1428372, at *4-5 (N.D. Cal. Apr. 15, 2021) (dismissing suit seeking to require hotel to provide more online information about accessibility than what agency guidance deemed sufficient, and collecting similar cases); *West v. Moe's Franchisor, LLC*, 2015 WL 8484567, at *2-3 (S.D.N.Y. Dec. 9, 2015) (dismissing suit seeking to require digital audio services in touchscreen soda machines because agency guidance provided that "a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu").[4]  Because DOT's guidance permits charges like the wait time fee, which is a generally applicable charge for a specific service that people with and without disabilities may require, dismissal is appropriate here on that same basis.

---

[4] These cases involve places of public accommodation, which are governed by separate statutory provisions and DOJ regulations.  *See supra* Part III (explaining statutory and regulatory framework).  Although these rules do not directly apply to transportation services, cases interpreting them provide helpful guidance in this parallel context.

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

1

2

### ii. DOT's controlling guidance permitting identical fees for identical services is consistent with the broader ADA.

DOT's interpretation permitting stowage fees and analogous charges is consistent with the language of the rules, which prohibit "*special* charges" and "*higher* fares or fees." 49 C.F.R. §§ 37.5(d), 37.29(c) (emphases added). And it is consistent with the statutory purpose to bar *discrimination*. "A facially neutral policy" discriminates based on disability "only if it burdens a plaintiff in a manner different and greater than it burdens others." *Szwanek v. Jack in the Box, Inc.*, 2021 WL 5104372, at *1 (9th Cir. Nov. 3, 2021) (internal quotation marks omitted).

The wait time fee does not have such a prohibited effect. *Szwanek* proves the point. That case dealt with an ADA claim by blind individuals challenging a fast-food restaurant's refusal to serve pedestrians at the drive-through window. As this Court observed in dismissing that suit, "the burden placed on *all pedestrians*, disabled or not, is exactly the same." *Szwanek v. Jack in the Box, Inc.*, 2020 WL 5816752, at *3 (N.D. Cal. Sept. 30, 2020) (describing and agreeing with defendants' argument). The Ninth Circuit affirmed this Court's dismissal, noting that "the significant population of non-disabled people who lack access to motor vehicles … face precisely the same burden as blind people—they must arrive at the drive-through window in a vehicle driven by someone else." *Szwanek*, 2021 WL 5104372, at *1. The stowage fee in DOT's example and the wait time fee at issue here are likewise nondiscriminatory because they do not affect people with disabilities in a manner *different* or *greater* than people without disabilities. In DOT's example, everyone who needs a transportation service to stow something must pay the same stowage fee. Likewise, under Uber's policy, everyone who needs a driver to wait for more than two minutes must pay precisely the same wait time fee for that same service.[5]

---

[5] While few courts have addressed these two DOT rules, many have interpreted the parallel DOJ rules that prohibit imposing "surcharge[s]" on people with disabilities "to cover the costs of … reasonable modifications." 28 C.F.R. §§ 36.301(c), 35.130(f). Those cases, discussed *infra* at 14, make clear that the same charges for the same services incurred by people with and without disabilities are not discriminatory "surcharges" under the ADA. The reasoning in these cases is consistent with DOT's stowage fee guidance and is equally applicable to DOT's rules prohibiting "special" and "higher" charges. *See Disabled in Action of Pa.*, 418 F. Supp. 2d at 658 (evaluating claims under 49 C.F.R. § 37.5(d) and 28 C.F.R. § 35.130(f) together).

UBER TECHNOLOGIES, INC.'S                                                3:21-cv-08735-WHA
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

The wait time fee is thus materially indistinguishable from the stowage fee that authoritative DOT guidance expressly permits. The government alleges that some riders pay the wait time fee because they "use mobility aids and devices such as wheelchairs and walkers that need to be broken down and stored in the vehicle." Compl. ¶ 26. But riders who require more than two minutes to bring their luggage to the curb and put it in the trunk pay the same fee. And DOT's binding interpretation of § 37.5(d) and § 37.29(c) expressly provides that "[c]harging the same fee for stowing a wheelchair as for stowing a suitcase would be proper." 49 C.F.R. pt. 37, App. D. The government's claim thus runs directly counter to DOT's interpretation of its own rules. Consistent with the regulatory text and statutory purpose, DOT's guidance makes clear that the ADA does not prohibit generally applicable fees that burden people with disabilities "in precisely the same manner as non-disabled individuals." *Szwanek*, 2021 WL 5104372 at *1. Because the wait time fee is generally applicable, like the stowage fee, the government has not stated a claim for a violation of 49 C.F.R. § 37.5(d) or § 37.29(c).

### 3. The ADA does not require modification of Uber's wait time fee policy.

Finally, the government claims that Uber must modify the wait time policy for riders with disabilities pursuant to the ADA's general directive to make reasonable modifications necessary to afford services to people with disabilities. *See* Compl. ¶ 60(c) (citing 42 U.S.C. § 12184(a) and (b)(2)(A)(ii), 49 C.F.R. § 37.5(f), and 28 C.F.R. § 36.302). This final theory fails both because the specific DOT rules discussed above control over the general obligation to make reasonable modifications, and because DOJ's own guidance expressly (and reasonably) permits time-based charges like the wait time fee.

### i. The specifically applicable DOT rules that permit generally applicable charges control here.

Two ADA rules specifically govern the fees that transportation services can charge—again, the very rules on which the government elsewhere relies. *See* Compl. ¶ 60(b) (citing 49 C.F.R. §§ 37.5(d), 37.29(c)). As discussed, DOT's guidance to those rules makes clear that charging

people with and without disabilities identical fees for identical services is not discriminatory.  The wait time fee is such a fee, so Uber "is not required to waive the charge."  49 C.F.R. § 37, App. D.

Compliance with those specific rules forecloses any theory that more general ADA provisions obligate Uber to modify its policy.  A claim "based on the 'overarching aims' of the ADA" cannot survive if the defendant complied with the specifically applicable rules and guidelines.  *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1221 (10th Cir. 2014).  For example, one district court rejected the claim that the ADA's general obligation to make reasonable modifications compelled Amtrak to provide more space for wheelchairs than directly applicable DOT regulations required, and upheld a fee for wheelchairs that needed additional space.  *Disabled in Action of Pa.*, 418 F. Supp. 2d at 656-58.  The ADA's broad nondiscrimination requirements, the court explained, do not impose "implicit[]" obligations "beyond those required" by "the plain language" of directly applicable rules.  *Id.* at 658 n. 3.  Other courts agree.  *See, e.g.*, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077-78 (7th Cir. 2013) (dismissing suit alleging a violation of general ADA rules governing all doors because defendant complied with the specific rules governing spring hinge doors); *Toomer v. City Cab Co.*, 2005 WL 67091, at *3 (D. Utah Jan. 10, 2005) (dismissing a claim that rested on the "general intent of the ADA" but "ignore[d] the specific provisions of the ADA that regulate the taxi cab industry"), *aff'd* 443 F.3d 1191 (10th Cir. 2006).  "To hold otherwise would render compliance with these regulations meaningless."  *United States v. Nat'l Amusements, Inc.*, 180 F. Supp. 2d 251, 258 (D. Mass. 2001).

### ii.  DOJ's published guidance explicitly permits charging time-based fees to individuals with disabilities.

The government's claim is also defeated by DOJ's own long-standing, authoritative interpretation of its reasonable modification rules.  Specifically, DOJ guidance provides that "professionals who bill on the basis of time" are free to "charg[e] individuals with disabilities on that basis." 28 C.F.R. pt. 36, App. C.  That unambiguous guidance squarely controls here.  Because

the wait time fee is a time-based charge, it is nondiscriminatory under the ADA. And because it is nondiscriminatory, no modification is required.

The government alleges that the wait time fee violates 49 C.F.R. § 37.5(f), *see* Compl. ¶ 60(c), a DOT-issued rule that obliges transportation services to comply with DOJ's separate rules requiring places of public accommodation to adopt reasonable modifications necessary to provide services to people with disabilities. *See* 49 C.F.R. § 37.5(f) (citing 28 C.F.R. §§ 36.301-.306). One such DOJ-issued rule that DOT has incorporated as against transportation services specifically governs the fees and charges that public accommodations may impose. *See* 28 C.F.R. § 36.301(c). That rule bars public accommodations from imposing a "surcharge" on individuals with disabilities for "the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications … required to provide … nondiscriminatory treatment" under the ADA. *Id.*

When DOJ gave notice of this proposed rule, commenters "sought clarification as to whether [it] prohibits professionals *from charging for the additional time* that it may take in certain cases to provide services to an individual with disabilities." 28 C.F.R. pt. 36, App. C (emphasis added). The answer, according to DOJ's definitive guidance appended to that rule, is an unequivocal *no*: "The Department does not intend § 36.301(c) to prohibit professionals who bill on the basis of time from charging individuals with disabilities on that basis." *Id.*; *see also* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544, 35564 (July 26, 1991). DOJ's guidance has not changed in thirty years.

That long-standing agency interpretation controls here. The government alleges that the wait time fee starts "two minutes after the Uber vehicle arrives at the pickup location" and ends when "the vehicle begins its trip." Compl. ¶ 20. The wait time fee is thus a "bill on the basis of time." 28 C.F.R. Pt. 36, App. C. Such time-based charges are nondiscriminatory under DOJ's clear guidance. And the ADA does not require covered entities to modify nondiscriminatory policies.

1      Moreover, charging the same time-based fees to everyone is not discriminatory, so

2  permitting such fees is consistent with the ADA's larger nondiscriminatory purpose.  Consider,

3  for example, a tour guide who bills for the time he spends giving a tour.  A tourist with a mobility-

4  related disability may require two hours to complete a tour that would otherwise take one.  A

5  tourist without a disability who frequently stops to take pictures may also require two hours.  If

6  both tourists pay the same amount for the second hour, then that fee is not discriminatory.  They

7  paid the same amount for the same thing.  DOJ's guidance permitting time-based fees thus

8  confirms the same fundamental nondiscrimination principle as DOT's guidance permitting

9  stowage fees:  A person with a disability does not face a "different and greater" burden than a

10  person without a disability by having to pay the same fee for the same service.  *Szwanek*, 2021 WL

11  5104372, at *1.

12      While not addressing time-based fees (which have been covered by clear DOJ guidance

13  for decades), courts have made clear that identical fees for identical goods and services that people

14  both with and without disabilities pay are not discriminatory surcharges under the ADA.  *See*

15  *Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4694049, at *8 (N.D. Cal. Aug. 6, 2015)

16  (dismissing challenge to additional cost of gluten-free food because "[a]ll patrons who order

17  gluten-free meals are charged the same amount whether or not they suffer from celiac disease");

18  *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 546-47 (W.D. Pa. 2013) (dismissing challenge to

19  "higher cost of plus-sized goods" because people with disabilities are not "charged a higher price

20  than non-disabled persons for the same plus-sized clothing"); *Robishaw v. The Providence Prob.*

21  *Ct.*, 206 F. Supp. 3d 723, 733 (D.R.I. 2016) (holding that court fees that "applie[d] to all users of

22  the probate court, not just those involved in adult guardianship proceedings" were not

23  discriminatory surcharges).  These cases further support DOJ's interpretation of the ADA as

24  permitting generally applicable, time-based fees for services that people both with and without

25  disabilities may require.

26      The wait time fee is charged to all riders on the basis of time.  While some individuals with

27  disabilities may always require the driver to wait for more than two minutes, they are by no means

28

UBER TECHNOLOGIES, INC.'S                         3:21-cv-08735-WHA
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

the only people who need that additional time.  Everyone who needs the driver to wait for more than two minutes pays the same fee.  The wait time fee policy is thus nondiscriminatory and does not violate the ADA, so it requires no modification.  The government has therefore failed to state a claim under 42 U.S.C. § 12184(b)(2)(A)(ii) and 49 C.F.R. § 37.5(f).

**B.      The Court Should Dismiss The Government's Claims On Behalf Of Individuals Who Never Requested A Refund From Uber And So Suffered No Injury Under The ADA**

Even if the ADA did require waiving generally applicable, time-based fees for identical services, the government's claims on behalf of "potential passengers," Compl. ¶ 61, and other individuals who never sought a refund of wait time fees should be dismissed.  The government can only recover damages on behalf of "persons aggrieved" under the ADA.   42 U.S.C. § 12188(b)(2)(B).  To state a claim under the ADA, a plaintiff must allege that "the defendant discriminated against the plaintiff based upon the plaintiff's disability" by failing "to make a requested reasonable modification."  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

Critically, a "plaintiff must initially prove that a modification was requested."  *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1036 (9th Cir. 2020).  "Reason dictates that in order for a defendant to be liable for discrimination 'on the basis of disability,' the defendant must have had adequate knowledge of the plaintiff's disability."  *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012) (citation omitted).  Businesses cannot provide a reasonable modification if they do not know a modification is needed.  Likewise, if a generally applicable fee could be "special" or "higher" as applied to people with disabilities, the remedy for that purported violation would be a refund.  Uber cannot be expected to refund the fee if the rider never alerted Uber to the need for a refund.

Courts therefore dismiss ADA claims where the plaintiff never informed the defendant of the need for a reasonable modification.  For example, the court in *Marshall v. Ross Stores, Inc.*, dismissed an ADA claim where the plaintiff alleged that a store failed to reasonably modify its

UBER TECHNOLOGIES, INC.'S
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

3:21-cv-08735-WHA

1    policy of only allowing employees to use its restroom.  2020 WL 8173022, at *4 (C.D. Cal. Oct.

2    14, 2020).  Even though the plaintiff alleged that store employees knew about his disability, the

3    court dismissed his claim because he failed to allege that he had alerted the employees specifically

4    to his need for that (or any) modification.  *Id.*  Similarly, in *Castillo v. Hudson Theatre, LLC*, the

5    court dismissed an ADA challenge to a theater's policy banning outside food because the plaintiff

6    failed to request a reasonable modification.  412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019).  The court

7    reasoned that "[a] plaintiff's request for a reasonable modification is necessary to determine

8    whether the defendant could reasonably provide such modification and whether the defendant's

9    subsequent failure to do so constitutes discrimination."  *Id.*  The store and theater employees might

10   have allowed the plaintiffs to use the employee restroom and bring in outside food if the plaintiffs

11   had requested a reasonable modification.  But if the defendant does not know about the need for a

12   modification, the failure to provide that modification is not discrimination under the ADA.[6]

13        This rule applies squarely here.  Uber cannot have discriminated against individuals

14   (including supposed "potential Uber passengers," Compl. ¶ 57) who never downloaded or used

15   the Uber app, never identified themselves as disabled, or never requested a refund.  Indeed, this

16   rule applies with special force here, as riders with disabilities may need drivers to wait more than

17   two minutes on some trips but not others, based on a host of factors like traffic, weather, road

18   conditions, or their own changing physical condition.  Individuals are not injured under the ADA

19   merely by presuming that a service provider will not help them, particularly when modifications

20   are in fact available.  *See Rutherford v. Evans Hotels, LLC*, 2020 WL 5257868, at *24 (S.D. Cal.

21

22        [6] While the ADA does not require futile requests for accommodations, *see* 42 U.S.C.
23   § 12188(a)(1), the United States admits that, "[u]pon request, Uber has issued wait time fee refunds
     to some riders with disabilities."  Compl. ¶ 28.  Futility of a request for modification may perhaps
24   be inferred from discriminatory architectural barriers, which are covered by other provisions of
     the ADA and generally cannot be remedied for individual patrons upon request.  *See Chapman v.*
25   *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949-50 (9th Cir. 2011).  Futility cannot likewise be
     inferred when a straightforward individualized exception to a generally applicable policy may be
26   available if requested, like allowing a customer to use the employee-only restroom, bring in outside
     food, or receive a refund.  *Cf. Marshall*, 2020 WL 8173022, at *4; *Castillo*, 412 F. Supp. 3d at
27   451.  And futility certainly cannot be inferred where, as here, a remedy was often in fact available.

28

UBER TECHNOLOGIES, INC.'S                                                3:21-cv-08735-WHA
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF

Sept. 3, 2020) (dismissing ADA claim where plaintiff's "alleged deterrence is based on his own suppositions" about accessibility barriers); *Castillo*, 412 F. Supp. 3d at 451.  And the government cannot state a claim on behalf of people who are not aggrieved under the ADA.

The government acknowledges that Uber provided some refunds upon request.  As a matter of law, the government cannot then obtain relief on the mere assumption that unmade requests would have been unsuccessful.  The Court should therefore dismiss the government's ADA claim to the extent it proceeds on behalf of "potential passengers" and other riders who did not request a reasonable modification and so are not aggrieved under the ADA.

## C.    The Complaint Does Not Plausibly Allege That Uber Is "Primarily Engaged in the Business of Transporting People"

Finally, the Court should dismiss the complaint in its entirety because the government fails to plausibly allege—and indeed, cannot plausibly allege—that Uber is "primarily engaged in the business of transporting people," 42 U.S.C. § 12184(a), as required for it to be covered by the statute.  Bare legal conclusions aside, *see* Compl. ¶¶ 11-13, the government alleges only that Uber "maintains control" over various aspects of the transaction between riders and drivers, *id.* ¶ 9.  These allegations do not plausibly show that Uber is engaged in the business of transporting people at all, much less that transporting people is Uber's primary business.

Uber recognizes that this Court recently held that § 12184(a) applies to the operator of a different ridesharing platform.  *See Indep. Living Res. Ctr. San Francisco v. Lyft, Inc.*, 2020 WL 6462390, at *2 (N.D. Cal. Nov. 3, 2020), and that other courts have ruled against Uber on this point, *see, e.g.*, *Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 84 (D.D.C. 2021); *Crawford v. Uber Techs., Inc.*, 2021 WL 3810259, at *4 (N.D. Cal. Aug. 26, 2021).  Uber respectfully believes these cases were wrongly decided.  In any event, those decisions do not change the fact that the government's allegations here come up short.

Uber is not engaged in the business of transporting people.  It is a technology company that creates and runs smartphone apps for the ridesharing and other industries.  The independent, third-party drivers who use Uber's app do the transporting; Uber connects drivers to riders and vice

17

versa.  At minimum, Uber is not *primarily* engaged in transporting people, as Uber serves both sides of the ridesharing market.  Uber provides services both to riders and to *drivers*, who do not use Uber's app to request transportation services, but rather to reduce transaction costs so they can more easily provide those services themselves, in their own vehicles.  The statute therefore does not apply.

The Seventh Circuit's decision in *Village of Bedford Park v. Expedia, Inc.*, supports this view.  876 F.3d 296 (7th Cir. 2017).  There, the court considered whether online travel agencies (OTAs) through which travelers booked rooms at participating hotels could be taxed as entities "engaged in the business of renting hotel rooms."  *Id.* at 305.  Customers paid the OTAs directly and never saw the hotel's independent rate.  *Id.* at 300.  In fact, customers normally "only deal[t] with the OTA prior to checking in because OTAs handle reservation modifications, cancellations, and refunds."  *Id.*  OTAs could "set their own policies and charge their own cancellation fees."  *Id.* Even though the OTAs controlled these fundamental aspects of the transaction, the Seventh Circuit held that they were not "engaged in the business of renting hotel rooms" under the plain meaning of that phrase.  *Id.* at 305.  The website operators, the Seventh Circuit reasoned, "do not own hotels or hotel rooms and they cannot independently grant customers access to hotel rooms.  Therefore, they cannot rent hotel rooms to customers."  *Id.*  "Thus, the OTAs are not engaged in the business of renting rooms …."  *Id.*

The same logic applies here:  The drivers who use Uber's app are "transporting people," just as the hotels in *Expedia* were "renting hotel rooms."  Uber is a technology company that facilitates drivers' ability to connect with riders who wish to be transported by drivers, just like Expedia is a technology company that facilitates hotels' ability to find guests who wish to rent rooms from hotels.  Because the government has not alleged facts showing that Uber's primary business is transporting people such that it is covered by the ADA, its claims should be dismissed.

1

## <u>CONCLUSION</u>

2      For these reasons, the United States' complaint against Uber should be dismissed with

3   prejudice.

4

5                                      Respectfully submitted,

6

7                                      /s/ Debo P. Adegbile
                                       Debo P. Adegbile (*pro hac vice*)
8                                      debo.adegbile@wilmerhale.com
                                       Alan E. Schoenfeld (*pro hac vice*)
9                                      alan.schoenfeld@wilmerhale.com
                                       WILMER CUTLER PICKERING
10                                         HALE AND DORR LLP
                                       7 World Trade Center
11                                     250 Greenwich Street
                                       New York, NY 10007 USA
12                                     Telephone: (212) 937-7294
                                       Facsimile:  (212) 230-8888
13

14
                                       Joshua A. Vittor (SBN 326221)
15                                     joshua.vittor@wilmerhale.com
                                       WILMER CUTLER PICKERING
16                                         HALE AND DORR LLP
                                       350 South Grand Avenue, Suite 2400
17                                     Los Angeles, CA 90071 USA
                                       Telephone:  (213) 443-5375
18                                     Facsimile:  (213) 443-5400

19

20                                     *Attorneys for Defendant*
                                       *Uber Technologies, Inc.*
21

22

23

24

25

26

27

28

UBER TECHNOLOGIES, INC.'S                                          3:21-cv-08735-WHA
NOTICE OF MOTION & MOTION TO DISMISS;
MEMORANDUM AND POINTS OF AUTHORITIES
IN SUPPORT THEREOF