KRISTEN CLARKE, Assistant Attorney General
REBECCA B. BOND, Chief
KATHLEEN P. WOLFE, Special Litigation Counsel
KEVIN J. KIJEWSKI, Deputy Chief
CHERYL ROST, Trial Attorney (NJBN 020982011)
MATTHEW FAIELLA, Trial Attorney (NYRN 4437711)
SARAH GOLABEK-GOLDMAN, Trial Attorney (DCRN 1047833)
DAVID W. KNIGHT, Trial Attorney (MDAN 0412140410)
MEGAN E. SCHULLER, Trial Attorney (CABN 281468)
U.S. Department of Justice
950 Pennsylvania Ave., NW- 4CON
Washington, DC 20530
Telephone: (202) 616-3193
Fax: (202) 307-1197
cheryl.rost@usdoj.gov
matthew.faiella@usdoj.gov
sarah.golabek-goldman@usdoj.gov
david.knight@usdoj.gov
megan.schuller@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7332
Fax: (415) 436-6748
david.devito@usdoj.gov
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | CASE NO.  3:21-CV-08735-WHA<br><br>UNITED STATES OF AMERICA'S OPPOSITION TO UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS<br><br>Hearing Date: March 10, 2022<br>Courtroom: 12<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ............................................................................................. ii

3

I.      INTRODUCTION  ............................................................................................... 1

4

II.     STATEMENT OF ISSUES TO BE DECIDED .................................................. 2

5

III.    FACTUAL BACKGROUND  .............................................................................. 2

6

IV.     LEGAL FRAMEWORK ...................................................................................... 3

7

V.      ARGUMENT  ...................................................................................................... 5

8

        A. Uber's Effort To Evade ADA Coverage By Denying That It Is A Transportation Company

9

        Contradicts The Complaint's Allegations And Should Be Rejected. ....................................... 6

        B. The United States Plausibly Alleges That Uber's Wait Time Fee Policies & Practices Violate

10

        Title III Of The ADA And Its Implementing Regulations. ...................................................... 8

11

           1.  Uber fails to ensure equitable fares and adequate boarding time for people with

12

               disabilities in direct contravention of controlling ADA regulations............................ 8

13

           2.  Uber's seemingly neutral wait time fee policy unduly burdens people who, because of

               disability, need more than two minutes to board an Uber car. ................................... 13

14

           3.  Uber fails to make necessary reasonable modifications despite numerous requests

15

               placing it on notice that its policy unduly burdens people with disabilities. .............. 16

16

           4.  Uber's wait time fee policy is an impermissible surcharge on people with disabilities,

               to which the time-based fee exception does not apply. ............................................... 21

17

VI.     CONCLUSION ................................................................................... 24

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**                                                                          Page(s)

*A.C. v. Taurus Flavors, Inc.*,
   No. 15 C 7711, 2017 WL 497765 (N.D. Ill. Feb. 7, 2017) .................................................... 19

*Access Living of Metro. Chi. v. Uber Techs., Inc.*,
   351 F. Supp. 3d 1141 (N.D. Ill. 2018) ........................................................................... 7, 19, 20

*Aguirre v. Cal. Sch. of Ct. Reporting (CSCR)-Riverside*,
   CV 05:16-01042-GHK (GJS), 2016 WL 7635957, (C.D. Cal. Dec. 2, 2016) .................................. 18

*Anderson v. Macy's, Inc.*,
   943 F. Supp. 2d 531 (W.D. Pa. 2013) ........................................................................... 22

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
   603 F.3d 666 (9th Cir. 2010) ........................................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 5

*Baughman v. Walt Disney World Co.*,
   685 F.3d 1131 (9th Cir. 2012) .............................................................................. 10, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 8

*Castillo v. Hudson Theatre, LLC*,
   412 F. Supp. 3d 447 (S.D.N.Y. 2019) ..................................................................... 20

*Collins v. Dartmouth-Hitchcock Med. Ctr.*,
   No. 13-cv-352-JD, 2015 WL 268842 (D.N.H. Jan. 21, 2015) ........................................... 19

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*,
   765 F.3d 1205 (10th Cir. 2014) ................................................................................. 17

*Crawford v. Uber Techs., Inc.*,
   No. 17-cv-02664-RS, 2018 WL 1116725 (N.D. Cal. Mar. 1, 2018) ............................... 7, 12, 16, 18

*Crawford v. Uber Techs., Inc.*,
   No. 17-cv-02664-RS, 2021 WL 3810259 (N.D. Cal. Aug. 26, 2021) ................................. 6

*Crowder v. Kitagawa*,
   81 F.3d 1480 (9th Cir. 1996) ...................................................................................... 13

*Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*,
   418 F. Supp. 2d 652 (E.D. Pa. 2005) ......................................................................... 11

*Duvall v. Cnty. of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) .................................................................................... 19

*Equal Rts. Ctr. v. Uber Techs., Inc.*,
   525 F. Supp. 3d 62 (D.D.C. 2021) .......................................................................... 6, 7

*Fortyune v. Am. Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004) ................................................................ 3, 16, 17, 20

*Greer v. Richardson Indep. Sch. Dist.*,
   472 F. App'x 287 (5th Cir. 2012) ..................................................................... 19

*Indep. Living Res. Ctr. S.F. v. Lyft, Inc.*,
   No. C 19-01438 WHA, 2020 WL 6462390 (N.D. Cal. Nov. 3, 2020) ........................... 4, 6

*Karasek v. Regents of Univ. of Cal*,
   956 F.3d 1093, 1104 (9th Cir. 2020) ................................................................... 8

*Lopez v. Catalina Channel Express, Inc.*,
   974 F.3d 1030 (9th Cir. 2020) ......................................................................... 20

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ......................................................................... 24

*Love v. Ashford S.F. II LP*,
   No. 20-cv-08458-EMC, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021) ......................... 17

*Marshall v. Ross Stores, Inc.*,
   No. CV 20-4703 PSG, 2020 WL 8173022 (C.D. Cal. Oct. 14, 2020) ........................... 20

*McGary v. City of Portland*,
   386 F.3d 1259 (9th Cir. 2004) ..................................................................... 13, 14

*Meisenhelder v. Fla. Coastal Sch. of Law, Inc.*,
   No. 3:09-cv-0074-HES-TEM, 2010 WL 2028089 (M.D. Fla. Feb. 19, 2010) ................. 19

*Namisnak v. Uber Techs., Inc.*,
   444 F. Supp. 3d 1136 (N.D. Cal. 2020) ................................................................ 7

*O'Hanlon v. Uber Techs., Inc.*,
   No. 2:19-cv-00675, 2021 WL 2415073 (W.D. Pa. June 14, 2021) ............................. 17

*O'Connor v. Uber Techs., Inc.*,
   82 F. Supp. 3d 1133 (N.D. Cal. 2015) .............................................................. 6, 7

*Payan v. Los Angeles Cmty. Coll. Dist.*,
   11 F.4th 729 (9th Cir. 2021) ....................................................................... 13, 20

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001) ................................................................................... 1, 3

*Phillips v. P.F. Chang's China Bistro, Inc.*,
   No. 5:15–cv–00344–RMW 2015 WL 4694049 (N.D. Cal. Aug. 6, 2015) ..................... 22

*Robishaw v. Providence Prob. Ct.*,
   206 F. Supp. 3d 723 (D.R.I. 2016) ................................................................... 22

*Scherr v. Marriott Int'l, Inc.*,
   703 F.3d 1069 (7th Cir. 2013) ........................................................................ 17

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
   675 F. Supp. 2d 376 (S.D.N.Y. 2009) ............................................................... 20

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
   848 F. Supp. 2d 460 (S.D.N.Y. 2012) ................................................................ 20

*Szwanek v. Jack in the Box, Inc.*,
   No. C 20-02953 WHA, 2020 WL 5816752 (N.D. Cal. Sept. 30, 2020 ...................... 14, 15

*Szwanek v. Jack in the Box, Inc.*,
   No. 20-16942, 2021 WL 5104372 (9th Cir. Nov. 3, 2021) .................................... 15

*West v. Moe's Franchisor, LLC*,
   No. 15cv2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015) ................................ 17

**STATUTES**

42 U.S.C. § 12101 ............................................................................................ 12, 15

42 U.S.C. § 12181 ................................................................................................... 4

42 U.S.C. § 12182 ........................................................................................ 4, 16, 18

42 U.S.C. § 12184 ............................................................................................. 4, 16

42 U.S.C. § 12186 ............................................................................................. 4, 15

42 U.S.C. §§ 12141-12165 ..................................................................................... 15

**REGULATIONS**

28 C.F.R. § 36.301 (July 26, 1991) ....................................................................... 22, 23

28 C.F.R. § 36.302 (July 26, 1991) .................................................................... 4, 16, 18

28 C.F.R. § 36.310 (July 26, 1991) ........................................................................... 15

28 C.F.R. pt. 36, app. C (July 26, 1991) .................................................................... 23

28 C.F.R. pt. 36, app. C, § 36.301 (July 26, 1991) ...................................................... 21, 23

49 C.F.R. § 37.1 (Sept. 6, 1991) ............................................................................... 4

49 C.F.R. § 37.3 (Sept. 6, 1991) ............................................................................... 4

49 C.F.R. § 37.5 (Sept. 6, 1991) ........................................................ 4, 5, 8, 9, 10, 16, 21, 22

49 C.F.R. § 37.11 (Sept. 6, 1991) .............................................................................. 5

49 C.F.R. § 37.29 (Sept. 6, 1991) ................................................... 5, 8, 10, 11, 21, 22, 24

49 C.F.R. § 37.37 (Sept. 6, 1991) .............................................................................. 6

49 C.F.R. § 37.167 (Sept. 6, 1991) ................................................... 5, 8, 9, 11, 13, 23

49 C.F.R. pt. 37, app. D (Sept. 6, 1991) ................................................................... 4, 12

49 C.F.R. pt. 37, app. D, § 37.3 (Sept. 6, 1991) ........................................................ 12

49 C.F.R. pt. 37, app. D, § 37.11 (Sept. 6, 1991) ....................................................... 5

49 C.F.R. pt. 37, app. D, § 37.29 (Sept. 6, 1991) ................................................. 10, 24

49 C.F.R. pt. 37, app. D, § 37.167 (Sept. 6, 1991) .....................................................15

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................... 8

Fed. R. Civ. P. 15 ......................................................................................................... 4

**OTHER AUTHORITIES**

Fed. Transit Admin., U.S. Dep't. of Transp., FTA C 4710.1, Americans with Disabilities Act (ADA):
    Guidance (2015).................................................................................................. 12

Plaintiff United States of America respectfully submits this opposition to Uber's Motion to Dismiss the United States' Complaint.

## I.    INTRODUCTION

The Americans with Disabilities Act's (ADA's) "sweeping purpose" is to "remedy widespread discrimination" against people with disabilities.  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001).  In passing the ADA, Congress expressly acknowledged that disability discrimination persists in the critical area of transportation and charged the Department of Transportation (DOT) with issuing regulations to carry out the statute's mandates.  At the same time, Congress declared that a business's failure to modify facially neutral policies was a form of discrimination.  Here, Uber automatically charges passengers "wait time" fees two minutes after an Uber car's arrival at the pickup location.[1]  Yet, despite the ADA's clear directives, Uber imposes these fees on people with disabilities who need additional time to board, even those who start boarding immediately upon the car's arrival and just need more time to transfer from or stow their wheelchairs.  Uber seeks to avoid liability by claiming that it is not actually engaged in the transportation business; that the ADA and its implementing regulations authorize Uber's policy; and that it is not required to modify this policy.  Each of these arguments fails.

Controlling ADA regulations explicitly require Uber to provide people with disabilities adequate boarding time and prohibit charging such passengers for services or accommodations required by the statute.  Charging passengers for exercising their legal right to adequate boarding time is thus impermissible, and for many passengers with disabilities, Uber's policy amounts to an illegal boarding time fee that is not imposed on others.  Uber's refusal to reasonably modify its policy for those with disabilities—passengers who are ready and waiting when their cars arrive but, because of their disabilities, need more than two minutes to board—penalizes them on the basis of disability in violation of the ADA.

Uber's proffered justifications for charging passengers with disabilities for the additional time they need to board lack merit, and its selective and forced reading of the statute, regulations, and

---

[1] For brevity, this brief refers to Uber's wait time fee policies and practices as "Uber's policy."

accompanying guidance should be rejected.  Much of Uber's Motion consists of arguments crafted from isolated sentences cherry-picked from agency guidance, divorced from context and misapplied, and contradicting controlling statutory and regulatory requirements.  Uber's arguments also implicate factual issues that cannot be resolved on a motion to dismiss, including issues involving Uber's control over its drivers and fee structures.

Because the United States' Complaint plainly alleges facts showing that Uber has violated, and continues to violate, the ADA, Uber's Motion should be denied.

## II.   STATEMENT OF ISSUES TO BE DECIDED

A.    Whether the United States' Complaint plausibly alleges that Uber is a transportation company covered under Title III of the ADA and its implementing regulations; and

B.    Whether the United States' Complaint plausibly alleges that Uber violated Title III of the ADA and its implementing regulations, where Uber's wait time fee policies and practices unjustly penalize passengers who need more than two minutes to board a car due to disability, and where Uber failed to modify this policy despite notice that it harms passengers with disabilities.

## III.   FACTUAL BACKGROUND

For years, Uber failed to ensure that people who need more than two minutes to board an Uber car due to disability can fully and equally enjoy Uber's services.  Uber charges all passengers a nondiscretionary wait time fee that starts automatically two minutes after the Uber car arrives at the pickup location and runs until the trip begins.  Compl. ¶¶ 19-25, 27.  Many passengers with disabilities need more than two minutes to get into an Uber car for various disability-based reasons, such as needing time to break down a wheelchair and put it in the car.  Compl. ¶ 26.  But Uber charges them anyway, even when they are at the pickup location and ready to board when the Uber car arrives.  Compl. ¶ 27.  Sometimes Uber refunds these added fees if a passenger with a disability happens to notice the fee on a receipt, takes the time to contact Uber and explain that the extra time was needed due to disability, and requests a refund.  Compl. ¶¶ 28, 54.  Other times, even when passengers charged wait time fees due to disability are savvy enough to take these steps, Uber still refuses to issue a refund.  Compl. ¶¶ 29, 41-42, 45-46, 52-54.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                    2

Uber's discriminatory wait time fees impact people with disabilities who rely on Uber's transportation services to travel to medical appointments, work, visits with family and friends, and social and leisure activities.  Compl. ¶¶ 30, 37, 50, 56.  The experiences of Passenger A, a 52-year-old woman who has quadriplegia and uses a manual wheelchair, and Passenger B, a 34-year-old man who has cerebral palsy and primarily uses a manual wheelchair, illustrate these impacts.  Compl. ¶¶ 31-55.  Both individuals ordered Uber rides only when ready to promptly board the car upon arrival, yet Uber routinely charged them wait time fees.  Compl. ¶¶ 39-41, 51, 53.

In August 2020, while using Uber for approximately ten trips per week to and from her rehabilitation facility, Passenger A realized that she was charged a wait time fee for every Uber ride she took for over three months.  Compl. ¶¶ 37-38, 41-42.  She continued to use Uber and incur wait time fees because of limited options to get to her daily rehabilitation appointments.  Compl. ¶ 43.  Passenger A tried to contact the company by email and Twitter to request refunds of the wait time fees.  Compl. ¶ 44.  When an Uber employee eventually responded, the employee told Passenger A that the wait time fees applied automatically and Uber could not stop the charges if Passenger A exceeded the two-minute limit for any reason.  Compl. ¶ 45.  Uber never refunded Passenger A for any of the wait time fees it charged her.  Compl. ¶ 46.

Passenger B similarly realized, after reviewing his receipts in September 2018, that Uber charged him a wait time fee for most of his rides.  Compl. ¶¶ 52-53.  Although Uber initially refunded Passenger B for wait time fees he incurred due to disability, an Uber customer service employee eventually told Passenger B that he had reached the maximum amount of refunds allowed and that Uber would not issue any more refunds for any reason.  Compl. ¶ 54.  Uber likewise charged discriminatory wait time fees to other passengers with disabilities nationwide, and denied them refunds even after Uber learned the fees were charged because of disability.  Compl. ¶¶ 29, 56.

## IV.   LEGAL FRAMEWORK

The ADA "responds to . . . a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate [disability] discrimination . . . ." *Fortyune v. Am. Mutli-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing *PGA Tour, Inc.*, 532 U.S. at 675).  To this end, Title III of the ADA

prohibits discrimination on the basis of disability and guarantees people with disabilities "full and equal enjoyment" of covered goods and services.  *See* 42 U.S.C. §§ 12182, 12184.  Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures," when necessary to afford services or accommodations to individuals with disabilities, absent a showing that the modifications would fundamentally alter those services.  42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302; *see also* 42 U.S.C. § 12184(b)(2)(A) (discrimination includes failure to make reasonable modifications consistent with Section 12182(b)(2)(A)(ii)); 49 C.F.R. § 37.5(f), (i)(2) (incorporating 28 C.F.R. § 36.302 by reference); *see also Indep. Living Res. Ctr. S.F. v. Lyft, Inc.*, No. C 19-01438 WHA, 2020 WL 6462390, at *2 (N.D. Cal. Nov. 3, 2020) (recognizing "the ADA's requirement for entities like Lyft [a transportation company similar to Uber] to make reasonable modifications to rectify a discriminatory policy, practice, or procedure" under Section 12182(b)(2)(A)(ii)).

Section 12184 of Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."[2]  42 U.S.C. § 12184(a).  The statute requires the Secretary of Transportation to issue regulations implementing the Title III transportation provisions, including Section 12184.  42 U.S.C. § 12186(a).  Pursuant to this direction, DOT promulgated 49 C.F.R. Part 37 (Part 37), along with an explanatory appendix on DOT's construction and interpretation of the regulations.[3]  49 C.F.R. pt. 37, app. D.  The "purpose of [Part 37] is to implement the transportation and related provisions of titles II and III of the [ADA]."  49 C.F.R. § 37.1.  DOT regulations specifically require private entities providing transportation services to "ensure that adequate time is provided to allow passengers with disabilities to complete boarding or

---

[2] The term "specified public transportation" is broadly defined as transportation by any "conveyance" (other than aircraft) "that provides the general public with general or special service (including charter service) on a regular and continuing basis."  42 U.S.C. § 12181(10); *accord* 49 C.F.R. § 37.3.

[3] The United States agrees with Uber that DOT's reasonable interpretation of its ADA regulations (Part 37) are entitled to deference, Mot. to Dismiss 9, to the extent that the regulatory text is ambiguous.  As explained below in Section V.B.1, however, the United States disagrees, with Uber's mischaracterization and misapplication of DOT's interpretation of Part 37.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                              4

disembarking from the vehicle."  49 C.F.R. § 37.167(i).  Those regulations also prohibit private entities from imposing special charges on people with disabilities, including those who use wheelchairs, to provide services required by DOT's regulations or needed accommodations.  49 C.F.R. § 37.5(d).  DOT regulations further forbid private transportation or taxi service providers from charging higher fares or fees for carrying individuals with disabilities and their equipment.  49 C.F.R. § 37.29(c).

The U.S. Department of Justice (DOJ), not DOT, is responsible for enforcing Title III and Part 37 against private entities like Uber that provide specified public transportation services.  *See* 49 C.F.R. § 37.11(c); 49 C.F.R. pt. 37, app. D, § 37.11.

## V.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Here, accepting the United States' well-pled allegations as true and drawing reasonable inferences therefrom, the United States easily meets this bar and states a claim that Uber is a covered entity and violates the ADA and its implementing regulations in several ways.  First, controlling ADA regulations require Uber to provide passengers with disabilities adequate boarding time and prohibit Uber from conditioning this right on paying a fee for it; yet, Uber does just that.  Second, Uber's seemingly neutral policy unduly burdens many passengers with disabilities by effectively charging them a fee for adequate boarding time, unlike passengers without disabilities who can easily step into the car in the two minutes allotted.  Third, Uber has failed to modify its policy for passengers who need more than two minutes to board an Uber car due to disability, despite numerous requests placing it on clear notice of the need to do so.  Moreover, Uber's wait time fee is an impermissible surcharge on people with disabilities.  These ADA violations are clearly and plausibly alleged in the United States' Complaint.  Though Uber's Motion cobbles together non-controlling exceptions and examples in the DOT and DOJ regulatory guidance, none excuse Uber from complying with directly on point, controlling regulations.  Regardless, Uber's arguments rely on facts and inferences found nowhere in the

Complaint and raise mixed questions of law and fact that cannot be decided on a motion to dismiss.  Uber's Motion should therefore be denied.

**A.    Uber's Effort To Evade ADA Coverage By Denying That It Is A Transportation Company Contradicts The Complaint's Allegations And Should Be Rejected.**

Uber argues, as it has in other lawsuits, that, despite the Complaint's express allegation that Uber is "primarily engaged in the business of transporting people," it is not a transportation company covered by the ADA.  Mot. to Dismiss 17-18.  This argument rests on unsupported factual assertions contradicting the Complaint's well-pled allegations and is inappropriate for a motion to dismiss.  Moreover, as Uber concedes, this Court and others have repeatedly and uniformly rejected this argument in cases against Uber or its competitor, Lyft.[4]  Mot. to Dismiss 17 (citing *Crawford v. Uber Techs., Inc.*, No. 17-cv-02664-RS, 2021 WL 3810259, at *4 (N.D. Cal. Aug. 26, 2021); *Indep. Living Res. Ctr. S. F. v. Lyft, Inc.*, No. C 19-01438 WHA, 2020 WL 6462390, at *2 (N.D. Cal. Nov. 3, 2020); *Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 84 (D.D.C. 2021)).  Uber's assertion that each of the many court rulings on this issue was wrongly decided is meritless.

Another court in this district has previously rejected Uber's argument that it merely sells software to connect potential drivers to potential passengers as "fatally flawed in numerous aspects." *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1141 (N.D. Cal. 2015).  In doing so, the court focused on what "Uber actually *does*," noting that it "does not simply sell software; it sells rides," and "is no more a 'technology company' than is [a taxi company that] uses CB radios to dispatch taxi cabs." *Id.* (emphasis in original).  The court looked to numerous facts, including that Uber markets itself as a

---

[4] Uber also argues that, even if it is engaged in the business of transporting people, that is not its *primary* business because it provides a service to both riders and drivers.  Mot. to Dismiss 18.  This is a strained argument at best and one that courts have likewise rejected.  *See, e.g.*, *Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 85 (D.D.C. 2021) (rejecting Uber's contention in a motion to dismiss that it was not "primarily" engaged in transportation services).  Even if Uber diversified its business to an extent that it was no longer primarily engaged in transportation services as a whole, the ridesharing part of its business would still need to comply with the ADA.  *See* 49 C.F.R. § 37.37(f); *see also* Compl. ¶ 7 (directing the Complaint to any part of the business "responsible for Uber's provision of transportation services").

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                    6

"transportation system" and unilaterally sets fares and fees without drivers having control. *Id.* at 1141-45. Accordingly, the court found that "Uber is most certainly a transportation company, albeit a technologically sophisticated one." *Id.* at 1141; *see also Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020) ("Uber's claim that it is 'not a transportation company' strains credulity, given the company *advertises itself* as a 'transportation system.'") (emphasis in original).

Since the *O'Connor* decision, this Court and other courts in this district have rejected similar arguments by Uber or Lyft that they are not transportation companies covered by Section 12184.[5] Courts have likewise rejected Uber's recycled argument that it is merely a technology company comparable to an online travel agency like Expedia.com. Mot. to Dismiss 18. In *Crawford v. Uber Technologies, Inc.*, for example, the court held that these arguments "miss the mark," describing Uber's analogy to Expedia.com as "a strained one." No. 17-cv-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018). There, the court explained that "nothing in Section 12184 requires that an entity own or lease its own vehicles in order to qualify as a private entity providing taxi service within the meaning of the statute." *Id.* Moreover, in denying Uber's motion to dismiss on this ground, the court found that Uber's level of control over its drivers presented "a mixed question of law and fact that cannot be determined on the pleadings." *Id.* (citing *O'Connor*, 82 F. Supp. 3d at 1133). Because plaintiffs "plausibly alleged that Uber is 'primarily engaged in the business of transporting people' within the meaning of Section 12184," the court rejected Uber's attempt to avoid the ADA. *Id.*

The same is true here. Uber advances unsupported facts beyond the Complaint's four corners and asks the Court to resolve a mixed question of law and fact that cannot be decided on a motion to dismiss. *See* Mot. to Dismiss 17-18. The United States clearly pleads that Uber is "a private entity primarily engaged in the business of transporting people" under Section 12184. Compl. ¶¶ 7-8, 10. That alone suffices to meet the notice pleading requirements of Rule 8 and *Twombly* on this point. *See*

---

[5] Other districts have followed suit. *See, e.g., Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 84 (D.D.C. 2021) (finding Uber is covered by Section 12184); *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 351 F. Supp. 3d 1141, 1158-59 (N.D. Ill. 2018) (denying Uber's motion to dismiss an ADA claim because plaintiffs plausibly alleged that Uber was "primarily engaged in the business of transporting people").

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                              7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  Nevertheless, the United States' Complaint goes further, explaining the manner and frequency with which Uber provides transportation services.  *See, e.g.*, Compl. ¶¶ 8-9, 11-14.  The Complaint also alleges facts showing the level of control Uber exercises over its cars, drivers, ride experience, and fee structures.  *See* Compl. ¶¶ 9, 19-29.  On a motion to dismiss, these facts must be accepted as true and construed in the light most favorable to the United States.  *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020).  Accordingly, even if Uber's characterization was correct (and every court to decide the issue has gotten it wrong), this would not support dismissal on the pleadings.  Uber's effort to evade the ADA entirely at this early stage should be rejected.

> **B.     The United States Plausibly Alleges That Uber's Wait Time Fee Policies & Practices Violate Title III Of The ADA And Its Implementing Regulations.**

Because ADA coverage is clear, the question for this Court becomes whether the United States has plausibly alleged facts showing that Uber's wait time fee policy violates Title III of the ADA and its implementing regulations.  The answer is yes.

> **1.     <u>Uber fails to ensure equitable fares and adequate boarding time for people with disabilities in direct contravention of controlling ADA regulations.</u>**

Uber makes much out of narrow exceptions and examples, taken out of context and misapplied, in agency guidance accompanying the ADA regulations.  *See* Mot. to Dismiss 8-11, 12-15.  Those exceptions and examples, however, do not defeat the United States' allegations that Uber violates specific ADA regulations governing transportation providers like Uber.  *See* Compl. ¶ 60 (citing 49 C.F.R. §§ 37.167(i), 37.5(d)&(f), 37.29(c)).  These include Uber's failure to ensure equitable fares for transporting people with disabilities, in violation of 49 C.F.R. §§ 37.5(d) and 37.29(c), and its failure to provide adequate time for people with disabilities to board an Uber car, in violation of 49 C.F.R. § 37.167(i).  *See* Compl. ¶¶ 2, 60.  Neither DOT's stowage fee example nor DOJ's limited time-based-fees exception excuses Uber's repeated and ongoing violation of these specific controlling regulations.  Moreover, determining whether and how these exceptions and examples apply, if at all, implicates mixed questions of law and fact that cannot be resolved on a motion to dismiss.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                    8

As to equitable fares, Uber argues that, regardless of the controlling regulations' language or purpose, it can charge "*everyone* a fee if they require the driver to wait more than two minutes, no matter the reasons." Mot. to Dismiss 7 (emphasis in original). This position is based on the erroneous assumption that Uber need not account for a passenger's disability, regardless of a policy's discriminatory impact on that passenger. As to adequate boarding time, Uber essentially argues that, even if it must provide people with disabilities enough time to board, nothing in the ADA prevents Uber from charging passengers extra for that legal entitlement. Mot. to Dismiss 5-7. Neither argument withstands scrutiny.

To begin, Uber's failure to ensure equitable fares for people with disabilities is inherently tied to its failure to provide adequate boarding time. The requirement to provide adequate boarding time would be hollow if it merely meant that adequate boarding time was required if a person with a disability paid extra for it. For a person who uses a wheelchair and is ready at the pickup location when an Uber car arrives, adequate boarding time logically will include time to travel to the car and breakdown and stow the wheelchair. For a similarly ready person with a vision disability, adequate boarding time will include time for the passenger to locate and enter the car. Under Uber's policy, such passengers who are ready at the designated pickup location, but cannot complete boarding within two minutes because of disability, will incur wait time fees that passengers without disabilities (also ready for pickup) will not. This is not an identical fee for identical service. Rather, as the United States alleges, this amounts to a special charge "not authorized by [49 C.F.R. Part 37], on individuals with disabilities, including individuals who use wheelchairs, for providing services required by this part or otherwise necessary to accommodate them." 49 C.F.R. § 37.5(d). Adequate boarding time is a service required by 49 C.F.R. Part 37 for passengers with disabilities, and thus Uber's wait time fee policy constitutes an impermissible "special charge" expressly prohibited by the DOT regulations.[6] *See* 49 C.F.R. §§ 37.5(d), 37.167(i). By its plain language, 49 C.F.R. § 37.5(d) compels denial of Uber's Motion.

---

[6] Applying the same reasoning, the United States alleges that Uber's policy violates a similar DOT regulatory provision that prohibits private taxi services from "charging higher fares or fees for carrying

Uber's reliance on DOT guidance about potential stowage fees is misplaced. *See* Mot. to Dismiss 8 (citing 49 C.F.R. pt. 37, app. D §§ 37.5, 37.29). In the cited guidance, DOT explains that taxi companies can charge a person with a disability a fee for stowing a wheelchair in the trunk so long as the fee is no higher than other stowage fees the company charges, such as for suitcases. *See* 49 C.F.R. pt. 37, app. D, §§ 37.5, 37.29. The guidance presumably rests on an assumption that, in the specific context of stowage fees,[7] people with and without disabilities are being charged equally for the same service—using the trunk for stowage—and are being provided with a like experience. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (explaining that covered entities should consider how people with disabilities use their service "and then take reasonable steps to provide" them "with a like experience"). Likewise, where a person with a disability chooses to delay boarding, or is otherwise delayed for nondisability-related reasons, the ADA permits wait time fees to the same extent as imposed on nondisabled passengers. By this reasoning, though, Uber cannot financially penalize passengers who are ready for pickup but, because of disability, need more than Uber's allotted two-minute grace period. Doing so fails to provide such passengers with a like experience to passengers without disabilities who can meet Uber's two-minute mark. Instead, Uber's wait time fees are effectively impermissible boarding fees for people with disabilities. *See id.*; 49 C.F.R. §§ 37.5(d), 37.29(c). Indeed, the guidance Uber relies on expressly warns against this type of disability discrimination by transportation companies. 49 C.F.R., pt. 37, app. D, § 37.29 ("The fact that it may take somewhat more time and effort to serve a person with a disability than another passenger does not

---

individuals with disabilities and their equipment than are charged to other persons." 49 C.F.R. § 37.29(c); *see also* Compl. ¶¶ 2, 60.

[7] Uber attempts to broadly apply the stowage fee example, but the guidance does not suggest that it should be applied in other contexts. Indeed, other examples in the guidance make clear that DOT's approach to stowage fees cannot be generalized or applied elsewhere. See, e.g., 49 C.F.R. pt. 37, app. D, § 37.5 (including example that charging for service animal accompaniment is prohibited). And, where there is a specific controlling regulation on point, as is the case here, neither the parties nor the Court need look to apply disparate examples in the guidance. The law is clear, and Uber has violated it.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                          10

justify discriminatory conduct with respect to passengers with disabilities.").  Accordingly, DOT's

commentary on stowage fees supports the United States' claims.[8]

Moreover, Uber's suggestion that dilatory passengers are similarly situated to passengers with

disabilities needing extra time to board disregards the diligence exercised by the aggrieved individuals

here and ignores the Complaint's allegations.  For example, Uber has been on notice for years that

Passenger B, despite being ready for pickup, needs additional time to complete boarding by transferring

from his wheelchair into an Uber car and having his wheelchair folded and stored.  Compl. ¶¶ 49-54.

This is hardly akin to Passenger B "tak[ing] more than two minutes to bring [his] luggage to the curb

and put it in the trunk."  *Cf.* Mot. to Dismiss 7-8.  The Complaint alleges ample facts showing that Uber

illegally charges fees to passengers who are ready, but, because of disability, cannot complete boarding

within two minutes.  *See* Compl. ¶¶ 26-29, 41-46, 52-55.  Uber's attempt to equate the experiences of

those passengers who have a disability-based need for additional boarding time with those of passengers

who are simply late should be rejected.

Turning to adequate boarding time, Uber concedes, as it must, that the ADA's implementing

regulations require Uber to provide adequate boarding time to people with disabilities.  Mot. to Dismiss

5 (citing 49 C.F.R. § 37.167(i)).  As discussed above, the regulations governing equitable fares and

adequate boarding time are inextricably linked.  Uber nevertheless asks the Court to read

Section 37.167(i) in isolation and construe it as only prohibiting Uber from pulling its car away from a

passenger with a disability while that passenger is boarding.  *See* Mot. to Dismiss 5-6 ("the rule

prohibits drivers from leaving before riders with disabilities can get into or out of the vehicle").  Uber's

overly narrow construction of Section 37.167(i) defies common sense and the ADA's goal of ensuring

---

[8] Uber's reliance on *Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652 (E.D. Pa. 2005), is similarly unavailing.  Uber describes the case as "reject[ing an] ADA claim challenging fees that were consistent with specifically applicable DOT rules[.]"  Mot. to Dismiss 7.  Here, however, the United States alleges that Uber's policy is *inconsistent* with DOT's specifically applicable rules.  As explained, Uber charges inequitable fares to Passengers A, B, and others with disabilities, *in violation of* (not consistent with) DOT regulatory provisions, because Uber charges them more than it does people without disabilities for the same service.  *Cf.* Mot. to Dismiss 7, 10 n.5; *see also* 49 C.F.R. §§ 37.5(d), 37.29(c).

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                    11

equal access to transportation.  *See* Compl. ¶ 4 (citing 42 U.S.C. § 12101(a)(3) (Congressional finding that disability discrimination exists in transportation)); *see also* Crawford, 2018 WL 1116725, at *4 ("A covered entity under Section 12184 is subject not just to the narrow requirements associated with the purchase of new vehicles, but the statute's broader anti-discrimination mandate.").  Simply put, Uber's construction would allow it to condition the ADA's right to adequate boarding time on a passenger's willingness or ability to pay whatever fee Uber demanded.  As the United States alleges, Uber's wait time fee policy does exactly that, except that passengers with disabilities have no idea how much they will be charged for adequate boarding time until the ride is over and they can review the fees on their receipt.  *See* Compl. ¶¶ 41-42, 52-53 (Passengers A and B each learned of wait time fees after rides had ended).

Additionally, the examples that Uber cites from the appendix to the DOT regulation and a 2015 Federal Transit Administration (FTA) ADA Circular (FTA Circular)[9] do not support, much less compel, the interpretation Uber advocates.  *See* Mot. to Dismiss 5-6.  In essence, Uber argues that because the sole example of Section 37.167(i)'s application in the DOT appendix does not expressly prohibit charging for adequate boarding time, entities are permitted to do so.  But DOT makes clear that its regulatory guidance is nonexhaustive.  49 C.F.R. pt. 37, app. D ("Some sections of the rule are not discussed in the appendix, because they are self-explanatory or we do not currently have interpretive materials to provide concerning them.").  Moreover, the FTA Circular's example is focused on public transit rail systems, which are not readily generalized to Uber's demand-responsive "taxi" services.[10] Unsurprisingly, examples aimed at rail systems do not mention the prohibition on charges for providing adequate boarding time and instead focus on railcar placement and doors staying open long enough to allow for boarding or disembarking.  Most likely, DOT simply did not need to express the fee

---

[9] The DOT circular is available at
https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/Final_FTA_ADA_Circular_C_4710.1.pdf.

[10]  The DOT appendix notes as much, explaining that "because how a system is categorized has consequences for the requirements it must meet, entities must determine, on a case-by-case basis, into which category their systems fall."  49 C.F.R. pt. 37, app. D, § 37.3.

prohibition because it is obvious from the context.  For example, when DOT explains that Section 37.167(i) prohibits "very rapidly closing doors on the vehicle before individuals with disabilities . . . have a chance to get on or off," the only reasonable interpretation of this prohibition is that it does not implicitly authorize charging passengers with disabilities extra for the privilege of not having the doors closed on them.  *Id.* § 37.167(i).  It simply does not follow that, unless DOT explicitly prohibits charging passengers with disabilities extra for adequate boarding time, it is therefore permitted.  Rather, the only reasonable interpretation of this provision is that, in requiring Uber to provide adequate boarding time, Section 37.167(i) necessarily prohibits it from conditioning that time on a passenger with a disability paying extra for it.  This interpretation is consistent with and furthers the statute and regulations as a whole and comports with common sense.

In sum, Uber's arguments for dismissal of alleged violations of these DOT regulations do not square with the Complaint's factual allegations or a logical reading of the statutory and regulatory scheme.  Uber's Motion to dismiss these claims should be denied.

### 2. Uber's seemingly neutral wait time fee policy unduly burdens people who, because of disability, need more than two minutes to board an Uber car.

Not only does Uber's policy violate clear and specific ADA regulations, it also results in disability-based unequal treatment prohibited by the ADA.  Uber's Motion proceeds from a false premise, improper at this stage, that Uber's wait time fees burden people with and without disabilities equally.  As the Ninth Circuit has "repeatedly recognized," an ADA violation can arise when facially neutral policies, like Uber's wait time fee policy, "unduly burden" people with disabilities, "even when such policies are consistently enforced."  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *see also Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (noting that "a[n] . . . entity may be required to make reasonable modifications to its facially neutral policies which disparately impact people with disabilities" under Title II); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (recognizing potential Title II violation where a facially neutral policy burdened people with disabilities "in a manner different and greater than it burdens others").

The Complaint's factual allegations plausibly show that Uber's policy impermissibly burdens people with disabilities in "different and greater" ways than people without disabilities. *Crowder*, 81 F.3d at 1484. The United States alleges that many passengers, because of disability, need more than two minutes to board an Uber car once it arrives and that Uber charges them wait time fees for the additional boarding time. Compl. ¶¶ 26-27. Additionally, the Complaint alleges that Uber repeatedly charged wait time fees to two aggrieved individuals with mobility disabilities who were consistently ready at the pickup location when the Uber car arrived. Compl. ¶¶ 31-33, 39-43, 48-49, 51-53. Finally, the Complaint alleges that Uber has charged discriminatory wait time fees to other people with disabilities throughout the country. Compl. ¶¶ 30, 56.

Taken together with the reasonable inferences that can be drawn from them, the Complaint's allegations show that people with disabilities who are ready to promptly board the Uber car are charged more than similarly situated people without disabilities who can board within the two minutes allotted. Uber's wait time fee therefore burdens people with disabilities "in a manner different and greater than it burdens others," *Crowder*, 81 F.3d at 1484, and the United States' Complaint states an ADA claim. *See McGary*, 386 F.3d at 1265 (recognizing a reasonable modification claim where the complaint alleged a failure to modify a facially neutral ordinance that unduly burdened the plaintiff because of disability).

When read in this context, the cases relied on by Uber support the United States' claim. Most notably, the allegations this Court and the Ninth Circuit found insufficient to survive a motion to dismiss in *Szwanek* are far removed from those here. *See* Mot. to Dismiss 10-11 (citing *Szwanek v. Jack in the Box, Inc.*, No. C 20-02953 WHA, 2020 WL 5816752 (N.D. Cal. Sept. 30, 2020), *aff'd*, No. 20-16942, 2021 WL 5104372 (9th Cir. Nov. 3, 2021)). In *Szwanek*, the complaint's dismissal rested on the conclusion that a restaurant's policy of not serving food to pedestrians at the drive-through windows posed "precisely the same burden" to people with vision disabilities and "the significant population of" people without disabilities who do not have access to cars: "they must arrive at the drive-through window in a vehicle driven by someone else." *Szwanek*, 2021 WL 5104372, at *1. People with and without disabilities who do not drive, under this reasoning, have the same option to access the drive-through window when the indoor dining room is closed.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                              14

By contrast, in this case about equal access to vital transportation services, Uber's policy does not leave people with and without disabilities with the same option to access its services.[11]  A person without a disability who wants to avoid the wait time fees can do so by being at the pickup location and promptly beginning to board as soon as the Uber car arrives.  As noted previously, Uber's policy is likely premised on the fact that two minutes is sufficient for most people to board.  But as the United States' allegations demonstrate, a person whose disability inherently causes them to need more than two minutes to board cannot similarly avoid the fee.  Like Passengers A and B, they may be ready and waiting at the designated pickup location and begin boarding immediately on the car's arrival, but two minutes is simply inadequate to complete boarding.  *See* Compl. ¶¶ 26-27, 39-42, 51-53, 56.  Uber's wait time fee policy therefore does not impose "precisely the same burden" on passengers with and without disabilities.  Thus, contrary to Uber's contentions, the reasoning this Court and the Ninth Circuit employed in *Szwanek* supports the United States' claims.

Further, the ADA's transportation regulations are premised on DOT's recognition that, in the transportation context, the experiences of passengers with and without disabilities are often not equal.  By requiring transportation providers to give adequate boarding time to people with disabilities, DOT addressed the reality that some people with disabilities "move more slowly," and that transportation providers should not penalize them for the extra time they need.  49 C.F.R. pt. 37, app. D, § 37.167 (recognizing that, when boarding rail and other transportation systems, people with disabilities "may move more slowly . . .").[12]  Uber's arguments consequently fail on both the law and the facts.

---

[11] The Ninth Circuit, in *Szwanek*, also observed that neither the ADA's legislative history nor its regulations indicated that Congress intended to cover situations where people want takeout meals when restaurant dining rooms are closed.  2021 WL 5104372, at *1.  The ADA, on the other hand, plainly articulates Congress's intention for the statute to address discriminatory access to transportation.  *See*, *e.g.*, 42 U.S.C. §12101(a)(3) (finding that discrimination against individuals with disabilities "persists in such critical areas as . . . transportation . . ."); *see also* 42 U.S.C. §§ 12141-65, 12184, 12186; 28 C.F.R. § 36.310; 49 C.F.R. pt. 37 (setting out the ADA obligations of public and private transportation service providers in detail).

[12] Uber proffers this same example from the DOT regulatory guidance in support of its arguments, Mot. to Dismiss 5-6, but, as discussed, *supra* at 12-13, that reliance is misplaced.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                              15

Because the Complaint sufficiently alleges that Uber's policy unduly burdens people with disabilities in violation of the ADA, Uber's Motion should be denied on this ground.

### 3.   Uber fails to make necessary reasonable modifications despite numerous requests placing it on notice that its policy unduly burdens people with disabilities.

Despite numerous requests notifying Uber that its policy unduly burdens people with disabilities, Uber has failed to modify its policy as required by the ADA and its implementing regulations.   Uber argues that the United States' reasonable modifications claim should be dismissed.   Mot. to Dismiss 11-17.   However, Uber's arguments misconstrue the statute and disregard the facts stated in the Complaint, which amply demonstrate that Uber fails to reasonably modify its policy regardless of notice that it improperly penalizes passengers who, because of disability, need additional time to board.

Under the ADA, Uber may not discriminate against individuals on the basis of disability in the "full and equal enjoyment" of its services.   42 U.S.C. § 12184(a).   Discrimination under Section 12184(a) includes a failure to make reasonable modifications to policies and practices when such modifications are needed to afford services to people with disabilities.   42 U.S.C. § 12184(b)(2)(A); 49 C.F.R. § 37.5(f), (i)(2); *see also* 42 U.S.C. § 12182(b)(2)(A)(ii) (incorporated by reference by 42 U.S.C. § 12184(b)(2)(A)); 28 C.F.R. § 36.302(a) (incorporated by reference by 49 C.F.R. § 37.5(f)).   This obligation reflects Congress's recognition that identical treatment of people with and without disabilities, such as facially neutral policies that have a disparate impact, can sometimes give rise to disability discrimination.   *See supra* at 13; *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004) (explaining that "the ADA defines discrimination as . . . treating a disabled patron the same as other patrons despite the former's need for a reasonable modification").   As a result, the ADA affirmatively requires covered entities to sometimes make changes to their usual way of operating to accommodate people with disabilities.   *See, e.g.*, *Baughman*, 685 F.3d at 1135 (explaining that covered entities should consider how people with disabilities use their service "and then take reasonable steps to provide" them "with a like experience"); *Crawford*, 2018 WL 1116725, at *4 (explaining that the ADA's "broader anti-discrimination mandate" includes "an affirmative obligation to make reasonable accommodations . . . and remove barriers to access").   Such changes "are designed 'to place those with

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                  16

disabilities on an equal footing, not to give them an unfair advantage.'" *Fortyune*, 364 at 1086 (citation omitted).

The cases relied on by Uber do not undermine the United States' reasonable modification claim. *See* Mot. to Dismiss 12.  Uber collects cases in which courts found the plaintiffs' claims conflicted with more specific regulatory requirements, such as technical architectural design standards or specific regulatory definitions that were irreconcilable with the plaintiffs' positions.  *Id.*; *see*, *e.g.*, *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1220-21 (10th Cir. 2014) (finding no violation of ADA's entitlement to "full and equal enjoyment" of public accommodations where retailer complied with ADA design standards applicable to the store's raised porches); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1076-78 (7th Cir. 2013) (finding the 2010 ADA Standards for Accessible Design did not require hotel to meet general standard for door closers where it complied with more specific design standard for spring hinges).  Here, contrary to Uber's contentions, there is no conflict between the ADA's reasonable modification requirement and the specific ADA regulations at issue.[13]  First, no ADA regulations authorize Uber to charge wait time fees for time that people with disabilities need to board an Uber car.  Specific ADA regulations do, however, require Uber to provide adequate boarding time for passengers with disabilities and prohibit Uber from charging them inequitable fares.  *See supra* at 8-13.  These regulations are fully consistent with the plain language of, and the principles underlying, the ADA's reasonable modification requirement.[14]

---

[13] Uber also inaptly cites other cases where the defendant acted consistently with relevant agency authority.  Mot. to Dismiss 9 (citing *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666 (9th Cir. 2010); *Love v. Ashford S.F. II LP*, No. 20-cv-08458-EMC, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021); and *West v. Moe's Franchisor, LLC*, No. 15cv2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015).  Here, the United States alleges that Uber's actions are inconsistent with relevant DOT mandates, so these cases miss the mark.  *See* Compl. ¶¶ 2, 60.

[14] Courts have rejected Uber's attempts to pit ADA requirements against each other by singularly focusing on individual regulatory or statutory provisions divorced from a more holistic reading of the ADA.  *See, e.g.*, *O'Hanlon v. Uber Techs., Inc.*, No. 2:19-cv-00675-LPL (MJ), 2021 WL 2415073, at *8 (W.D. Pa. June 14, 2021) ( "[T]he inclusion of a particularized exemption balancing competing considerations under the ADA . . . cannot reasonably be read to negate the over-arching goals and mandate of Section 12184: that a private entity electing to primarily engage in the business of transporting people fully include those with disabilities and provide reasonable accommodations in

Uber's argument for dismissal also incorrectly assumes that a reasonable modification claim always requires an individualized request.  Even if that was the case, the Complaint specifically alleges Passengers A and B made, and Uber denied, individualized reasonable modification requests, and that Uber engaged in a pattern or practice of denying requests from other passengers with disabilities. Compl. ¶¶ 29, 44-46, 54.  These allegations alone warrant denial of Uber's Motion to Dismiss the United States' reasonable modification claim.

In any event, the numerous requests that Uber received and denied put Uber on notice of the need to modify its policy for people with disabilities who need more time to board an Uber car. Although reasonable modifications often follow a request from a person with a disability, nothing in the statute or regulation limits a covered entity's obligation to situations where it receives a request.  To the contrary, the statute's plain language indicates that covered entities must affirmatively modify policies, practices, and procedures whenever the entity knows that the modification is needed to avoid discriminating against people with disabilities.  *See* 42 U.S.C. § 12182(b)(2)(A)(ii) (explaining discrimination by covered Title III entities includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [or] services . . . to individuals with disabilities . . ."); 28 C.F.R. § 36.302(a) ("A public accommodation shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to afford goods [or] services . . . to individuals with disabilities . . . .").  The United States agrees that "[b]usinesses cannot provide a reasonable modification if they do not know a modification is needed," Mot. to Dismiss 15, but when an entity is aware of the need for a modification, an individualized request is not required.[15]  *See Aguirre v. Cal. Sch. of Ct. Reporting (CSCR)-Riverside*,

---

furtherance of that objective."); *Crawford*, 2018 WL 1116725, at *4 (recognizing, in a case about Uber's failure to offer wheelchair accessible vehicles, that "[a] covered entity under Section 12184 is subject not just to the narrow requirements associated with the purchase of new vehicles, but the statute's broader anti-discrimination mandate").

[15] To the extent that Uber argues that the "futile gestures" doctrine is inapplicable, that argument is unsuitable for determination at the motion to dismiss stage given the fact-specific nature of such a determination and the Complaint's plausible allegations.  *See* Mot. to Dismiss 16 n.6; Compl. ¶¶ 29

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                                    18

No. CV 05:16-01042-GHK (GJS), 2016 WL 7635957, at *3 (C.D. Cal. Dec. 2, 2016) ("Nothing in the text of Title III requires a disabled individual to request an accommodation before bringing suit."); *A.C. v. Taurus Flavors, Inc.*, No. 15 C 7711-MFK, 2017 WL 497765, at *4 (N.D. Ill. Feb. 7, 2017) (emphasizing that Title III's language does not require a person with a disability to request a reasonable accommodation before filing suit for injunctive relief); *Access Living of Metro. Chi.*, 351 F. Supp. 3d at 1157 ("[S]uch a request is not necessary when an entity is already on notice about the need for a modification.").

In cases brought under the ADA's parallel Title II reasonable modification requirement for state and local governments, the Ninth Circuit has agreed.[16]  *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (noting that a public entity is on notice that an accommodation is needed if the need for accommodation is obvious); *see also Greer v. Richardson Indep. Sch. Dist.,* 472 F. App'x 287, 296 (5th Cir. 2012) (holding that a "failure to expressly 'request' an accommodation is not fatal to an ADA [Title II] claim where the defendant otherwise had knowledge of the individual's disability and needs but took no action").  To hold otherwise would allow Uber, despite ample notice of its policy's inequitable effect, to discriminate and only offer a remedy on an ad hoc basis for victims savvy enough to realize that they were unlawfully charged and sufficiently skilled to navigate Uber's process for requesting a refund.  Indeed, Uber boldly asserts that the remedy for imposing discriminatory charges is to refund the fee.  *See* Mot. to Dismiss 3 (acknowledging that "many riders" have incurred a wait time fee "due to a disability," only some of which were refunded upon request), 15 (explaining that if wait

---

(Uber repeatedly denied wait time fee refunds to passengers who requested them and informed Uber that they were charged because of their disabilities); 57 (potential passengers with disabilities knew of and did not use Uber because of wait time fees).

[16] District courts in other circuits similarly have recognized in Title III cases that a reasonable modification claim can arise absent a request.  *See Collins v. Dartmouth-Hitchcock Med. Ctr.*, No. 13-cv-352-JD, 2015 WL 268842, at * 5 (D.N.H. Jan. 21, 2015) ("Unless the need for accommodation is obvious, the requirement for reasonable accommodation usually does not arise unless an accommodation is requested."); *Meisenhelder v. Fla. Coastal Sch. of L., Inc.,* No. 3:09-cv-0074-HES-TEM, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010) ("Where the disability, resulting limitations, and necessary reasonable accommodations [ ] are not open, obvious, and apparent, the initial burden rests primarily on the [individual] to specifically identify the disability . . . and to suggest the reasonable accommodations.") (citation omitted).

time fees violate the ADA, "the remedy for that purported violation would be a refund").  To the contrary, once on notice, Uber has an obligation under the ADA to modify its policy to avoid charging the discriminatory fee in the first place.  *See Payan*, 11 F.4th at 739 (explaining that "[s]ystemic barriers call for systemic reasonable modifications").

It is true that the Ninth Circuit has said that an individual alleging a Title III reasonable modification claim must show that a defendant "(a) fail[ed] to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability."  *Fortyune*, 364 F.3d at 1082; *see also Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1036 (9th Cir. 2020).  But in *Fortyune*, there was no question that the plaintiff had requested a modification, so the court had no reason to consider whether a specific request is always necessary under other sets of facts.  364 F.3d at 1083.  Similarly, in *Lopez*, the decision turned on other issues.  *See Lopez*, 974 F.3d at 1034 (decided on achievability and feasibility of widening restroom door).  None of the cases on which Uber relies involved allegations showing a pattern or practice of discrimination, or numerous similar requests, that put a defendant on notice of a broader need to modify its policy.[17]  *See* Mot. to Dismiss 15-16 (citing *Marshall v. Ross Stores, Inc.*, No. CV 20-4703 PSG, 2020 WL 8173022, at *5 (C.D. Cal. Oct. 14, 2020), and *Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451-52 (S.D.N.Y. 2019)).  Those cases do not inform a case, such as this one, where the United States alleges a pattern or practice of disability discrimination in which the defendant received multiple specific modification requests and was on notice of the need to modify its policy to prevent ongoing discrimination against passengers with disabilities.  *See* Compl. ¶¶ 29, 38, 41-45, 52-54 (alleging that Uber was aware that Passengers A, B, and others sought refunds of wait time fees charged because of disability); *see also Access Living of Metro. Chi*, 351 F. Supp. 3d at 1158 ("If Uber already knew that a reasonable modification was necessary to make its services

---

[17] In addition, *Shaywitz* is materially distinct because that case was decided at summary judgment, with the benefit of a fully developed factual record. *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012).  The court in *Shaywitz* had previously denied the defendant's motion to dismiss the ADA claims, finding that the plaintiff satisfied his pleading burden for a reasonable modification claim and that "relevant questions of fact" related to the claim "presumably will be elucidated by the discovery process." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 391 (S.D.N.Y. 2009).

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                       20

accessible to plaintiffs and chose not to do so, requiring an express request from plaintiffs would serve no purpose.").

Uber's arguments ignore the Complaint's well-pled facts showing that Uber denied reasonable modification requests from numerous individuals with disabilities, and that Uber was on notice for years of the need to reasonably modify its policy for people who, because of disability, need additional time to board the Uber car. As such, Uber's Motion to Dismiss the United States' reasonable modification claim should be denied.

**4.    Uber's wait time fee policy is an impermissible surcharge on people with disabilities, to which the time-based fee exception does not apply.**

Finally, Uber incorrectly asserts that its policy is permitted by DOJ guidance and so need not be modified. *See* Mot. to Dismiss 12-13. Uber bases this assertion on commentary in the appendix to the DOJ public accommodations regulations about a time-based fee exception to the ADA's prohibition on disability surcharges. *Id.*; *see also* 28 C.F.R. § 36.301(c). However, that commentary does not excuse Uber from complying with the controlling DOT regulations discussed earlier on adequate boarding time, equitable fees, and reasonable modifications. Nor does that discussion preclude the United States from applying the DOT regulations' more specific prohibitions on special charges and higher fares or fees, as it has done here. *See* 49 C.F.R. §§ 37.5(d), 37.29(c). Uber's arguments misconstrue the DOJ guidance, rely on facts not alleged in the United States' Complaint, and raise mixed questions of law and fact. For these reasons, Uber's Motion should be denied.

Section 36.301(c) prohibits public accommodations from "impos[ing] a surcharge" on people with disabilities "to cover the costs of measures" necessary to provide "the nondiscriminatory treatment required by" the ADA and the DOJ's public accommodations regulation. 28 C.F.R. § 36.301(c). Under this provision, for example, a public accommodation cannot charge people with disabilities for the cost of providing auxiliary aids and services, such as interpreters, or "reasonable modifications in policies, practices, or procedures, or any other measure necessary to ensure compliance with the ADA." 28 C.F.R. pt. 36, app. C. § 36.301. While the United States' Complaint does not specifically allege a violation of 28 C.F.R. § 36.301(c), Uber correctly notes that Section 37.5(f) of the DOT regulations incorporates by

reference certain sections of the DOJ regulations, including Section 36.301.  The Complaint thus arguably encapsulates a violation of Section 36.301(c).[18]  Mot. to Dismiss 13; *see* 49 C.F.R. § 37.5.  Uber's reading of selected guidance in the appendix to the DOJ regulations, however, is incorrect.

Uber contends that a single piece of guidance accompanying the DOJ public accommodations regulations controls the outcome of this case and permits Uber's policy.  *See* Mot. to Dismiss 12-15.  Uber's position seems to imply that the DOJ surcharge regulation is in tension with the DOT regulations on fees and charges.  Yet, the DOJ regulation's surcharge prohibition is fully consistent with the DOT regulations' prohibitions on special charges or higher fares or fees.  *Compare* 28 C.F.R. § 36.301(c) *with* 49 C.F.R. §§ 37.5(d), 37.29(c).  Additionally, none of the few federal cases about surcharges under Section 36.301(c) involved claims against transportation service providers proceeding only under Section 12184.  Nor do those cases suggest that Section 36.301(c) permits a company like Uber, a private entity providing transportation services, to charge people with disabilities for their needed boarding time.  The cases Uber relies on to suggest otherwise all involve people with and without disabilities being charged the same fee for the same goods or services.  Mot. to Dismiss 14; *see Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344-RMW, 2015 WL 4694049, at *8 (N.D. Cal. Aug. 6, 2015) (imposing identical charges for gluten-free meals on customers with and without disabilities); *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 546-47 (W.D. Pa. 2013) (imposing same charge for plus-sized clothes on all customers regardless of disability); *Robishaw v. Providence Prob. Ct.*, 206 F. Supp. 3d 723, 733 (D.R.I. 2016) (charging equal court fees to all users of probate court regardless of disability).  But the United States plainly alleges that Uber, through its wait time fees, charges passengers with disabilities more for adequate boarding time than passengers without disabilities, so the cases are not analogous.

---

[18] The same factual allegations supporting the claim that Uber charges inequitable fares to passengers with disabilities, in violation of Section 12184(a) of the ADA and provisions of the DOT regulations, similarly support a plausible violation of Section 36.301(c) of the DOJ regulations.  *See supra* at 8-13.  But if the Court disagrees with this reading of the Complaint, it need not reach Uber's argument about Section 36.301(c).

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                22

1    Uber contends that its wait time fee is no different from certain time-based charges of

2  professionals allowed under Section 36.301(c).  Uber's position rests on a portion of the appendix to

3  DOJ's public accommodations regulations, in which the DOJ responded to commenters on the then-

4  proposed regulations.  The appendix provides:

> Other commenters sought clarification as to whether Sec. 36.301(c)
> prohibits professionals from charging for the additional time that it may take
> in certain cases to provide services to an individual with disabilities. The
> Department does not intend Sec. 36.301(c) to prohibit professionals who
> bill on the basis of time from charging individuals with disabilities on that
> basis. However, fees may not be charged for the provision of auxiliary aids
> and services, barrier removal, alternatives to barrier removal, reasonable
> modifications in policies, practices, and procedures, or any other measures
> necessary to ensure compliance with the ADA.

11  28 C.F.R. pt. 36, app. C, § 36.301.  This commentary does not authorize Uber to charge wait time fees to

12  passengers with disabilities who require additional time to board.

13    First, Uber is effectively charging passengers with disabilities for the cost of providing a

14  reasonable modification.  Uber is legally required to provide adequate boarding time and may not charge

15  passengers with disabilities for the cost of modifying Uber's policy to comply with this legal mandate.

16  The cited DOJ commentary expressly prohibits such a fee and, in fact, supports the United States' claims.

17  *See* 28 C.F.R. pt. 36, app. C (stating that "fees may not be charged for the provision of . . . reasonable

18  modifications in policies, practices, and procedures, or any other measures necessary to ensure compliance

19  with the ADA").[19]

20    Second, Uber's reliance on DOJ commentary to the public accommodations regulations, without

21  applying on point DOT regulations and accompanying guidance, is misplaced.  Regulation of

22  transportation entities was entrusted to the Secretary of Transportation, and the DOT regulations reflect

23  that agency's consideration of ADA requirements in the transportation setting.  DOT's regulatory

24  guidance underscores that the agency was well aware that individuals with disabilities were at particular

25  

26  [19] Ensuring adequate boarding time also qualifies as "[an]other measure[] necessary to ensure
27  compliance with the ADA," given the express guarantee of adequate boarding time under the ADA's
implementing regulations.  28 C.F.R. pt. 36, app. C; *see* 49 C.F.R. § 37.167(i).

28  OPPOSITION TO MOTION TO DISMISS

risk of discrimination by private transportation providers like Uber: "The fact that it may take somewhat more time and effort to serve a person with a disability than another passenger does not justify discriminatory conduct with respect to passengers with disabilities." 49 C.F.R. pt. 37, app. D, § 37.29. And as discussed, Uber's policy violates specific DOT regulations, to which no exceptions apply.[20] The DOJ commentary on time-based fees does not bless such charges in the transportation context, particularly in the face of specific transportation-based regulatory language prohibiting them.

Lastly, even if DOJ's commentary could be directly applied to Uber's wait time fees, which it should not, determining whether and how this surcharge exception impacts this case implicates mixed questions of law and fact. Such questions include whether Uber's wait time fee is properly characterized solely as a time-based fee, *see* Compl. ¶ 23 (alleging that the wait time fees are also based on GPS); whether it is an impermissible fee for the cost of providing a needed and required reasonable modification under the ADA; and whether Uber, a private entity that provides transportation services, is a "professional" "bill[ing] on the basis of time," as contemplated in the regulatory guidance. Resolving these mixed questions on a motion to dismiss would be improper.

## VI.   CONCLUSION

For the above reasons, the United States respectfully requests that this Court deny Uber's Motion to Dismiss. Should this Court grant Uber's Motion in whole or in part, the United States respectfully requests that any such dismissal be without prejudice and that the United States be granted leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation omitted).

---

[20] Given the directly applicable DOT regulations and guidance, Uber's tour guide example is inapt. Mot. to Dismiss 14. Put simply, the context of a guided tour is very different from the transportation context. Even indulging the comparison, the time-based tour is, at best, analogous to an Uber ride from one place to another, not to the adequate boarding time mandated by the ADA. Extending Uber's tour guide example to its wait time fee policy would be more like permitting a tour guide to charge someone with a mobility disability extra to use an ADA-required accessible ramp to access the ticket office. Just as an accessible-ramp fee would clearly violate the ADA, so does Uber's wait time fee policy.

OPPOSITION TO MOTION TO DISMISS
3:21-CV-8735 WHA                                    24

1  Dated: February 4, 2022                     Respectfully submitted,

2  STEPHANIE M. HINDS                          KRISTEN CLARKE
   United States Attorney                      Assistant Attorney General
3                                              Civil Rights Division

4                                              REBECCA B. BOND
                                               Chief
5

6  /s/ *David M. DeVito*                       /s/ *Cheryl Rost*
   DAVID M. DEVITO                             KATHLEEN P. WOLFE
7  Assistant United States Attorney            Special Litigation Counsel
                                               KEVIN J. KIJEWSKI
8                                              Deputy Chief
                                               CHERYL ROST
9                                              MATTHEW FAIELLA
                                               SARAH GOLABEK-GOLDMAN
10                                             DAVID W. KNIGHT
                                               MEGAN E. SCHULLER
11                                             Trial Attorneys
                                               Disability Rights Section
12                                             Civil Rights Division
                                               U.S. Department of Justice
13
                                               Attorneys for the United States of America
14

15

16         **ATTESTATION PURSUANT TO LOCAL CIVIL RULE 5-1(i)(3)**
17
          I, David M. DeVito, attest that any signatories indicated by a conformed signature (/s/) within
18
   this e-filed document have approved, and concur in, this filing. I declare under penalty of perjury under
19
   the laws of the United States of America that the foregoing is true and correct.
20
                                               /s/ *David M. DeVito*
21                                             DAVID M. DEVITO

22

23

24

25

26

27

28  OPPOSITION TO MOTION TO DISMISS
    3:21-CV-8735 WHA                    25