DEBO P. ADEGBILE (*pro hac vice*)
debo.adegbile@wilmerhale.com
ALAN E. SCHOENFELD (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
 7 World Trade Center
 250 Greenwich Street
 New York, NY 10007
Telephone:  (212) 295-6717
Facsimile:   (212) 230-8888

JOSHUA A. VITTOR
CA Bar No. 326221
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
 350 South Grand Avenue, Suite 2400
 Los Angeles, CA 90071
Telephone: (213) 443-5375
Facsimile:  (213) 443-5400

*Attorneys for Defendant Uber Technologies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　　Defendant. | Case No. 3:21-cv-08735-WHA<br><br>**UBER TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hearing Date: March 10, 2022<br>Courtroom: 12<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. The ADA Does Not Prohibit Generally Applicable, Time-Based Fees Like The Wait Time Fee ....................................................................................................2

        1. The wait time fee is not an impermissible special charge or a higher fare or fee. .......................................................................................2

            i. The ADA allows charging people with and without disabilities the same fee for the same service. ................................2

            ii. The government's reading of the rules and DOT guidance is not plausible. ...................................................................5

            iii. The wait time fee does not burden people with disabilities in a manner different or greater than people without disabilities. ...................................................................................6

        2. The government does not allege that Uber denied adequate boarding time to riders with disabilities. ...............................................8

        3. Uber need not modify its ADA-compliant wait time fee policy. .................8

    B. The Court Should Dismiss The United States' Claim On Behalf Of Riders With Disabilities Who Did Not Request A Modification .......................................9

    C. The Government Has Not Plausibly Alleged In This Case That Uber Is Primarily Engaged In The Business Of Transporting People ...............................11

III. CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.C. v. Taurus Flavors, Inc.*,
  2017 WL 497765 (N.D. Ill. Feb. 7, 2017) .................................................................................10

*Aguirre v. California School of Court Reporting (CSCR)-Riverside*,
  2016 WL 7635957 (C.D. Cal. Dec. 2, 2016) ............................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................12

*Collins v. Dartmouth-Hitchcock Medical Center*,
  2015 WL 268842 (D.N.H. Jan. 21, 2015).................................................................................10

*Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*,
  765 F.3d 1205 (10th Cir. 2014) ..................................................................................................6

*Disabled in Action of Pennsylvania v. National Passenger R.R. Corp.*,
  418 F. Supp. 2d 652 (E.D. Pa. 2005) .........................................................................................4

*Duvall v. County of Kitsap*,
  260 F.3d 1124 (9th Cir. 2001) ..................................................................................................11

*Greer v. Richardson Independent School District*,
  472 F. App'x 287 (5th Cir. 2012) .............................................................................................11

*Meisenhelder v. Florida Coastal School of Law, Inc.*,
  2010 WL 2028089 (M.D. Fla. Feb. 19, 2010) ..........................................................................10

*Payan v. Los Angeles Community College District*,
  11 F.4th 729 (9th Cir. 2021) .....................................................................................................10

*Robertson v. Las Animas County Sheriff's Department*,
  500 F.3d 1185 (10th Cir. 2007) ................................................................................................11

*Szwanek v. Jack in the Box, Inc.*,
  2021 WL 5104372 (9th Cir. Nov. 3, 2021).................................................................................7

*Village of Bedford Park v. Expedia, Inc.*,
  876 F.3d 296 (7th Cir. 2017) ....................................................................................................12

**Federal Statutes**

42 U.S.C. § 12184....................................................................................................................11, 12

iii

**Regulations**

14 C.F.R. § 382.19 ..................................................................................................................... 4

14 C.F.R. § 382.31 .................................................................................................................. 4, 7

28 C.F.R. pt. 36, App. C ....................................................................................................... 4, 8, 9

28 C.F.R. § 36.301 ................................................................................................................. 4, 9

28 C.F.R. § 36.302 ................................................................................................................. 6, 9

49 C.F.R. pt. 37, App. D .................................................................................................. 3, 5, 6, 7

49 C.F.R. § 37.5 ................................................................................................................ *passim*

49 C.F.R. § 37.29 ............................................................................................................ 1, 2, 3, 5

49 C.F.R. § 37.167 ............................................................................................................. 2, 5, 8

I.      INTRODUCTION

Generally applicable wait time fees that are charged to all riders who require the driver to wait more than two minutes do not violate the ADA or DOT rules. Nothing in the ADA requires that businesses waive fees for people with disabilities if people without disabilities pay the same fee for the same service. That is particularly true for time-based fees. Museum tour guides do not have to waive their hourly fee if a tourist with a mobility disability requires more time to complete a tour. Attorneys do not have to waive their hourly fee if a meeting runs longer because a client requires a sign language interpreter. Taxi drivers asked to wait while a rider runs an errand do not have to stop the meter for riders with mobility disabilities who take longer. And Uber does not have to waive wait time fees, which compensate drivers for their time, if a rider requires more than two minutes to board due to a disability. Under Uber's policy, riders both with and without disabilities who take more than two minutes to board a driver's vehicle pay the exact same amount. Identical fees for identical services are not discriminatory, even if some people with disabilities may be more likely to incur those fees.

Despite the government's efforts to paint it otherwise, this case is not about denying riders with disabilities adequate time to board, nor is it about drivers canceling on riders with disabilities. It is about generally applicable fees for drivers' time.

The case therefore turns on the two DOT rules that specifically govern what fees can and cannot be charged: 49 C.F.R. § 37.5(d), which prohibits "special" charges for providing people with disabilities services that are required under the ADA, and § 37.29(c), which prohibits "charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons." By their terms, these rules do not prohibit charging identical fees for identical services to individuals both with and without disabilities. DOT's controlling guidance confirms the point. And its illustrative, long-standing examples reiterate that generally applicable fees for performing services are not discriminatory even if some riders with disabilities must pay them more often than riders without disabilities. What's more, DOJ's own guidance to its parallel

rule explicitly allows covered entities to charge individuals with disabilities their standard time-based fees for providing ADA-required services that take more time because of a disability.

The government attempts to minimize its long-established regulatory guidance to advance its current litigation position. It asks the Court to ignore the plain text of the governing rules, set aside controlling agency guidance, and hold that no covered entity can charge individuals with disabilities fees for services even if they charge individuals without disabilities the exact same fee for the exact same service. The Court should reject this unreasonable request and dismiss the case.

## II.     ARGUMENT

### A.     The ADA Does Not Prohibit Generally Applicable, Time-Based Fees Like The Wait Time Fee

The government claims that the wait time fee policy violates DOT's rules in three ways: first, it purportedly violates 49 C.F.R. § 37.167(i), which requires transportation services to ensure that riders with disabilities have adequate time to board (Compl. ¶ 60(a)); second, it purportedly violates rules prohibiting "impos[ing] special charges … on individuals with disabilities," § 37.5(d), and "charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons," § 37.29(c) (Compl. ¶ 60(b)); and third, it purportedly violates the DOT rule incorporating the DOJ rule that requires reasonable modifications to discriminatory policies (Compl. ¶ 60(c)).

The government acknowledges (at Opp. 9-10, 22) that the first and third of these theories turn entirely on the second. This case boils down, then, to whether the wait time fee is a "special" or "higher" fee under § 37.5(d) or § 37.29(c). It is not, so the government's entire case falls.

#### 1.     The wait time fee is not an impermissible special charge or a higher fare or fee.

##### i.     The ADA allows charging people with and without disabilities the same fee for the same service.

The plain text of the two key rules at issue makes clear that covered entities can charge people with disabilities fees for services—including services the ADA requires—if people without disabilities use the same service and are charged the same fee. *First*, 49 C.F.R. § 37.5(d) prohibits

"*special* charges," not *all* charges, nor regular or ordinary charges, for providing those services. *Id.* (emphasis added). If people without disabilities require the same services and are charged the same fees, then those fees are not "special"—they are just charges, applied equally to everyone.[1] *Second*, § 37.29(c) prohibits "*higher* fares or fees," not *the same* fares or fees as are charged to other persons. *Id.* (emphasis added). A fee is not "higher" for individuals with disabilities than for "other persons" if everyone pays the same amount for the same service.

DOT's illustrative examples defeat the government's theory that fees cannot be imposed for services the ADA requires. Take stowage fees. Section 37.29(c) bars taxi services from "refusing to assist with the stowing of mobility devices." 49 C.F.R. § 37.29(c). Stowing wheelchairs is thus one of the "services required by" the ADA for which transportation services cannot impose a "special charge" under § 37.5(d). Under the government's theory, a transportation provider could not charge a fee for stowage because that would be an impermissible "special charge" under § 37.5(d). But DOT guidance says exactly the opposite, explicitly *permitting* a fee for stowing a wheelchair, as long as it is no greater than the fee for stowing luggage: "If a taxi company charges $1.00 to stow luggage in the trunk," it can also "charge a passenger $1.00 to stow a wheelchair in the trunk." 49 C.F.R. pt. 37, App. D, § 37.5(d). DOT's guidance to § 37.29(c) likewise explains that "[c]harging the same fee for stowing a wheelchair as for stowing a suitcase would be proper." 49 C.F.R. pt. 37, App. D, § 37.29(c). Thus, while the ADA requires adequate boarding time for riders with disabilities, it does not prohibit charging everyone the same fee for time spent providing the same service, including a service required by the ADA.

Another DOT rule implementing a similar statute governing the nondiscrimination obligations of air carriers confirms the point. That rule prohibits "impos[ing] charges for providing … services that [must] be provided to passengers with a disability." 14 C.F.R. § 382.31(a). DOT

---

[1] DOT's guidance is clear on this point. It states that § 37.5(d)'s "prohibition on special charges applies to charges for service to individuals with disabilities that are higher than charges for the same or comparable services to other persons." 49 C.F.R. pt. 37, App. D. Put another way, "charges for services to individuals with disabilities that are" *the same as* "charges for the same or comparable services to other persons" *do not* violate § 37.5(d). *See id.*

3

UBER TECHNOLOGIES, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS

3:21-cv-08735-WHA

also provides, however, that air carriers may "charge a passenger for the use of more than one seat if the passenger's size or condition (e.g., use of a stretcher) causes him or her to occupy the space of more than one seat. This is not considered a *special charge* under this section." *Id.* § 382.31(b) (emphasis added). Thus, while carriers cannot refuse to provide transportation to passengers with disabilities, *id.* § 382.19(a), they can charge generally applicable fees for the additional seats that people with disabilities may require. In short, DOT expressly rejects the government's theory that generally applicable fees for required services are impermissible special charges. This Court should do the same.

DOJ's own interpretation of a parallel rule in the public accommodations context again refutes the government's theory that the wait time fee is prohibited. *Cf. Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652, 658 (E.D. Pa. 2005) (evaluating claims under these rules together). That rule prohibits imposing a "surcharge" on individuals with disabilities for "measures … that are required to provide [those individuals] with the nondiscriminatory treatment" required under the ADA. 28 C.F.R. § 36.301(c). In its published guidance, DOJ explains that this does not "prohibit professionals who bill on the basis of time" from "charging for the additional time that it may take in certain cases to provide services to an individual with disabilities." 28 C.F.R. pt. 36, App. C. The government now dismisses its guidance, arguing it is only relevant to the surcharge rule. Opp. 21-24. But these parallel rules are clearly intended to prohibit the same type of fees, and covered entities should be able to reasonably rely on the guidance to each rule in tandem. The government offers no reason why generally applicable time-based fees would be discriminatory "special" or "higher" charges for transportation services when they are not discriminatory "surcharges" for public accommodations. And there is none: Generally applicable fees for like services are not discriminatory in either context and are permitted under the ADA.

### ii. The government's reading of the rules and DOT guidance is not plausible.

Notwithstanding that clear text and agency guidance, the government contends that these rules unambiguously prohibit charging *any* fee for services the ADA requires, including, as relevant here, ensuring that riders with disabilities have "adequate" time to board under 49 C.F.R. § 37.167(i). *See* Opp. 1, 11-13 & n. 6. But, contrary to DOJ's claim that "specific controlling regulations" support their position, Opp. 8, no regulation states that identical fees for identical services are discriminatory. In fact, the controlling regulations provide exactly the opposite—such fees are neither "special" under § 37.5(d) nor "higher" under § 37.29(c).

The government therefore resorts to language nowhere found in the regulations, arguing that Uber "fails to ensure equitable fares." Opp. 8-9, 11. DOT's rules and guidance govern what is permitted under the ADA, not the government's litigation position about what is "equitable." The government's suggestion (*e.g.*, Opp. 10 n.7) that the Court interpret these rules without the benefit of DOT's definitive guidance is wrong. As the government acknowledges, DOT's reasonable interpretation of its rules is entitled to deference. Opp. 4 n.3. The government also argues that the Court should ignore the guidance about stowage fees, claiming it "cannot be applied elsewhere." Opp. 10 n.7. But the examples in the guidance are intended to illustrate what types of fees constitute "special charges" or "higher fares or fees." Moreover, each example is consistent with the stowage fee and similarly undercuts the government's reading. The guidance to § 37.5(d) first provides a series of explicit "example[s]" of discriminatory fees. 49 C.F.R. pt. 37, App. D, § 37.5. A shuttle service that charges a flat rate of $20 for a ride to the airport cannot "charge $40.00 because the passenger had a disability or needed to use the shuttle service's lift-equipped van." *Id.* Nor could it impose "[h]igher mileage charges for using an accessible vehicle" than for

using another vehicle, or "charg[e] extra" for carrying service animals.[2] *Id.* Unlike these examples of discriminatory policies, the wait time fee does not impose special or higher charges solely on people with disabilities.

The guidance then clarifies the broader point that § 35.7(d) "does not mean … that a transportation provider cannot charge nondiscriminatory fees to passengers with disabilities." 49 C.F.R. pt. 37, App. D, § 37.5. And it supplies an example of such a nondiscriminatory fee: A provider that charges $1.00 for stowing either a wheelchair or luggage is "not required to waive the charge" for the wheelchair. *Id.*; *see also* 49 C.F.R. pt. 37, App. D, § 37.29 (generally applicable stowage fee "would be proper"). The stowage fee example, like the other examples in the guidance, squarely applies here and demonstrates that the wait time fee is permissible.

### iii. The wait time fee does not burden people with disabilities in a manner different or greater than people without disabilities.

The Court should also reject the government's argument that the wait time fee imposes "different and greater" burdens on riders with disabilities, Opp. 13-15, or that it does not provide them with "a like experience," Opp. 10-11, 16, because some people with disabilities cannot avoid the fee, even when they are at the pickup location on time. DOT and DOJ guidance squarely permit charging everyone identical fees for identical services, even if some people with disabilities may always require that service. The government cannot escape that controlling guidance by framing its argument in terms of the "'overarching aims' of the ADA." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1221 (10th Cir. 2014). And under that guidance, equal fees charged to all similarly situated people for the same services do not "impact [people

---

[2] Contrary to the government's suggestion (Opp. 10 n.7), the agencies' treatment of service animals is consistent with its approach to the stowage fee and the other illustrative examples, permitting covered entities to charge generally applicable fees when the entity is required to incur some expense because of service animals. *See* 28 C.F.R. § 36.302(c)(8) ("If a public accommodation normally charges individuals for the damage they cause, an individual with a disability may be charged for damage caused by his or her service animal.").

with disabilities] differently or in a greater manner than" others. *Szwanek v. Jack in the Box, Inc.*, 2021 WL 5104372, at *1 (9th Cir. Nov. 3, 2021).[3]

The government's argument that the wait time fee "unduly burdens" people with disabilities, Opp. 13-15, ignores the stowage fee example and other guidance from DOT. Riders who use wheelchairs will *always* have to pay a stowage fee if they want to ride, while other riders will not—they can choose whether to travel with luggage they need stowed. As DOT explains, that generally applicable stowage fee is nondiscriminatory under these rules. 49 C.F.R. pt. 37, App. D. The same is true of the wait time fee. Some riders with certain disabilities may always need more time and riders without disabilities may not, since they will not always need to, for example, stow luggage or situate their children in car seats. But every rider who needs more than two minutes to board any given ride pays the exact same fee.[4]

And the stowage fee example is not an anomaly; it is a specific example of the responsible agency's consistent approach to the statute. Airplane passengers with certain disabilities may always require more than one seat, while other passengers will not. Yet DOT rules provide that it is not discriminatory to charge riders with disabilities a generally applicable fee for the cost of the additional seat. 14 C.F.R. § 382.31(b). Courts have also held that charging people with disabilities a generally applicable fee for services or goods that they always require is not a prohibited surcharge. *See* MTD 14 (collecting cases). And even though individuals with disabilities may always require more time for certain services, DOJ's guidance allows generally applicable, time-

---

[3] Even if the government were correct that the wait time fee is discriminatory because some riders always require more than two minutes to board because of a disability, that would be true only as to those riders. Many riders with disabilities need more than two minutes on some trips but not others. The wait time fee burdens these riders in the same manner as it burdens riders without disabilities, who likewise only sometimes require more than two minutes to board.

[4] For the same reasons, the government's argument that the wait time fee does not provide a "like experience" to riders with and without disabilities, Opp. 10, is belied by the controlling rules and DOT guidance. Just as the stowage fee in DOT's example is charged to everyone who needs anything stowed, wait time fees are charged to everyone who requires more than two minutes to board. Under DOT's controlling interpretation, both the stowage fee and the wait time fee provide like experiences to all similarly situated individuals.

based bills for the additional time it may take to serve individuals with disabilities. 28 C.F.R. pt. 36, App. C. The wait time fee, which is a generally applicable charge for the time a driver spends waiting for a rider to board, should be treated no differently.[5]

### 2. The government does not allege that Uber denied adequate boarding time to riders with disabilities.

The government acknowledges (Opp. 9) that it does not allege that any Uber policy causes drivers to deny "adequate time" for "individuals with disabilities to complete boarding." 49 C.F.R. § 37.167(i). It instead claims this rule is "inherently tied to" and "inextricably linked" with the alleged violations of § 37.5(d) and § 37.29(c). Opp. 9, 11-13. Because the government has failed to state a claim under those two provisions, it has failed to state a claim under § 37.167(i) as well.

Even if it were not linked to the other alleged violations, the government's adequate boarding time allegations would still fail. *See* MTD 5-7. Section 37.167(i) only requires that transportation services provide adequate boarding and disembarking time. It says nothing about fees. The government nonetheless argues that transportation services violate this rule when they provide adequate boarding time and charge fees. That reading is implausible. If a fee violates a rule (although the wait time fee does not), it violates the rules that actually govern fees.

### 3. Uber need not modify its ADA-compliant wait time fee policy.

The government's reasonable modification argument also turns entirely on its claim that the wait time fee is a prohibited "special" and "higher" fee for people with disabilities. The government agrees (as it must) that covered entities need not modify practices that comply with agency rules and guidelines, contending instead that Uber must modify its practices only because they violate § 37.5(d) and § 37.29(c). *See* Opp. 16-17 & n. 13.

---

[5] The government also argues that the wait time fee does not provide similarly situated riders with and without disabilities with like experiences because it treats passengers with disabilities who are waiting at the curb when the car arrives the same as "dilatory" riders who are "simply late." Opp. 11. But the government does not contest that riders without disabilities may need more than two minutes to board even when they arrive at the pick-up spot on time. They may, for example, need that time to load their luggage or groceries in the trunk, situate their children in car seats, locate their driver's car outside a crowded airport, or navigate a busy bike lane, icy sidewalk, or mountain of plowed snow between the curb and the street.

DOJ's guidance to its own rules makes clear that a policy of charging time-based fees does not require modification. *See* 28 C.F.R. pt. 36, App. C (providing that time-based charges for the additional time it takes to provide services to individuals with disabilities are not surcharges under 28 C.F.R. § 36.301(c)). The government argues that its guidance to the surcharge rule is irrelevant to whether wait time fees violate its rule requiring reasonable modifications, 28 C.F.R. § 36.302(a). But it would make no sense and would be unfair for DOJ to expressly permit time-based fees with the one hand while implicitly forbidding them with the other—specifically blessing them in the guidance to 28 C.F.R. § 36.301(c) while never hinting that they violate § 36.302(a). If time-based fees were discriminatory and so required modification under § 36.302(a), as the government now contends, DOJ would not explicitly permit them in its guidance to § 36.301(c).

The government does not argue otherwise. It instead points to the DOT rules alone. *See* Opp. 21-23. As shown above, the wait time fee does not violate these DOT rules, which are entirely consistent with DOJ's guidance to its parallel surcharge rule. And in any event, no freestanding DOT rule requires reasonable modifications. DOT merely incorporated DOJ's reasonable modification rules. 49 C.F.R. § 37.5(f). And DOJ's definitive guidance to those rules makes clear that they permit time-based bills.[6]

### B.    The Court Should Dismiss The United States' Claim On Behalf Of Riders With Disabilities Who Did Not Request A Modification

The complaint also fails to state a claim insofar as it seeks relief on behalf of individuals who never put Uber on notice about their disability or how it affected them on any specific trip,

---

[6] The government suggests that two supposed questions of fact preclude a dismissal based on DOJ's surcharge guidance: whether a driver acts as a "professional" with respect to wait time fees and whether those fees are "solely … time-based." Opp. 24. Drivers are paid for their time and qualify as professionals; the point of the guidance is to recognize that duration-based charges are not "higher" or "special" simply because people with disabilities may take more time to use the relevant service. And the government itself alleges that fees "start two minutes after the Uber vehicle arrives at the pickup location" and are "charged until the vehicle begins its trip." Compl. ¶ 20. The government describes paragraph 23 of its complaint as "alleging that the wait time fees are also based on GPS." Opp. 24. In fact, it alleges only that GPS determines when the driver arrives and the two-minute window begins. Compl. ¶ 23. The fee is based on time alone.

including individuals who never downloaded the Uber app or never requested a ride. Compl. ¶¶ 57, 59, 61. Even if a modification were required (it is not), the only way Uber could know whether any specific rider has incurred a wait time fee on a specific trip because of a disability, and the only way Uber could remedy that issue, is if the rider put Uber on notice of their need for a modification.[7]

The government's opposition conflates *specific* notice that an individual needs help with *general* notice about the need for an available modification in the abstract. Opp. 18-21. General notice may suffice where the required modification is an obvious structural remedy. For example, individualized notice is not required if a restaurant parking lot has large potholes and no handicapped spaces. See *A.C. v. Taurus Flavors, Inc.*, 2017 WL 497765, at *4 (N.D. Ill. Feb. 7, 2017). General notice may also suffice where there is no systemic policy in place to provide individualized assistance upon notice. See, e.g., *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738-39 (9th Cir. 2021) (distinguishing between claims "based on an individualized request or need" and claims that focus on "systemic accessibility"). But that is not the case here, as the government concedes that Uber made refunds available. Compl. ¶ 28.

Individualized notice *is* required when it is not obvious that a person needs individualized help, and the defendant has no other way to know it should provide that help. The government's cases agree. See *Collins v. Dartmouth-Hitchcock Med. Ctr.*, 2015 WL 268842, at * 5 (D.N.H. Jan. 21, 2015) (requests not required if "the need for accommodation is obvious"); *Meisenhelder v. Fla. Coastal Sch. of Law, Inc.*, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010) (requests required if "the disability, resulting limitations, and necessary reasonable accommodations … are not open, obvious, and apparent"); see also *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007) (public entities only required to provide assistance if they "have

---

[7] Mere notice of a rider's disability would not suffice. Many riders with disabilities may need drivers to wait more than two minutes on some trips but not others, based on a host of factors like traffic, weather, road conditions, or their own health. And, as the government concedes, the wait time fee should not be waived when riders with disabilities need more time for unrelated reasons. Opp. 10.

knowledge that *the individual* is disabled, either because that disability is obvious or because the individual (or someone else) has informed the entity of the disability" (emphasis added)).

One case on which the government relies, *Greer v. Richardson Independent School District*, 472 F. App'x 287 (5th Cir. 2012), is particularly illuminating. *See* Opp. 19. The plaintiff in that case watched a football game from ground level through a fence because the only way to access the bleachers was by stairs, and she used a wheelchair. *Greer*, 472 F. App'x at 288. The Fifth Circuit rejected her ADA claim because "she never asked if she could be accommodated by sitting somewhere else in the stadium." *Id.* at 295. The court recognized that the "failure to expressly 'request' an accommodation is not fatal to an ADA claim where the defendant otherwise had knowledge of the *individual's* disability and needs but took no action." *Id.* at 296 (emphasis added). But it held that the venue did not have that individual knowledge because the plaintiff never gave it "any opportunity to reaccommodate her." *Id.* at 297.[8] The same is true here.

### C. The Government Has Not Plausibly Alleged In This Case That Uber Is Primarily Engaged In The Business Of Transporting People

Finally, the government has not plausibly alleged facts showing that Uber is "primarily engaged in the business of transporting people." 42 U.S.C. § 12184(a). The government relies on its allegations in paragraphs 7-14, *see* Opp. 7-8, but they do not suffice.

Paragraphs 7 and 10 contain conclusory statements with no facts showing how Uber (an app developer) transports people. Paragraphs 11, 12, and 13 are mere "[t]hreadbare recitals" of statutory language. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Paragraph 8 alleges that "Uber arranges rides between passengers and a fleet of drivers," and paragraph 14 alleges how many rides. By the government's own allegation, the "fleet of drivers" does the transporting, not Uber.

---

[8] The defendants in the other cases the government cites had individualized notice. *See Aguirre v. Cal. Sch. of Ct. Reporting (CSCR)-Riverside*, 2016 WL 7635957 (C.D. Cal. Dec. 2, 2016) (defendant refused plaintiff's enrollment because she was disabled); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001) (plaintiff requested videotext display). Moreover, the *Duvall* court held that entities are "on notice that an accommodation is required" when "the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)." *Duvall*, 260 F.3d at 1139.

Compl. ¶ 8. Paragraph 9 alleges that Uber "maintains control over" certain aspects of riders' experiences, but control over certain aspects of an exchange between customers and drivers does not mean Uber is "engaged" in the same business as the drivers. *See Village of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 300, 305 (7th Cir. 2017).[9] The government must plead more to satisfy this essential element of its claim.

### III.  CONCLUSION

For these reasons, the Court should dismiss the complaint with prejudice.

Respectfully submitted,

/s/ Debo P. Adegbile
Debo P. Adegbile (*pro hac vice*)
debo.adegbile@wilmerhale.com
Alan E. Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
Tel.:  (212) 295-6717
Fax:   (212) 230-8888

Joshua A. Vittor (SBN 326221)
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071 USA

---

[9] Even if helping riders connect with independent drivers is actually "transporting people," the government's sparse allegations do not show that Uber is primarily engaged in that business. Drivers also use the Uber app. Compl. ¶ 8. They do so not to request transportation services (the drivers don't need a ride anywhere), but to provide those transportation services more efficiently themselves. Uber provided that service to each driver for each of 2.3 billion trips from 2017-2018. *Id.* ¶ 14. A business that provides such significant services to drivers is not plausibly "*primarily* engaged in the business of transporting people." 42 U.S.C. § 12184(a) (emphasis added).

Tel.: (213) 443-5375
Fax: (213) 443-5400

*Attorneys for Defendant*
*Uber Technologies, Inc.*