**EXHIBIT 1**

KRISTEN CLARKE, Assistant Attorney General
REBECCA B. BOND, Chief
KEVIN J. KIJEWSKI, Deputy Chief
CHERYL ROST, Trial Attorney (NJBN 020982011)
MATTHEW FAIELLA, Trial Attorney (NYRN 4437711)
DAVID W. KNIGHT, Trial Attorney (MDAN 0412140410)
MEGAN E. SCHULLER, Trial Attorney (CABN 281468)
U.S. Department of Justice
950 Pennsylvania Ave., NW- 4CON
Washington, DC 20530
Telephone: (202) 616-5311
Fax: (202) 307-1197
cheryl.rost@usdoj.gov
matthew.faiella@usdoj.gov
david.knight@usdoj.gov
megan.schuller@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7332
Fax: (415) 436-6748
david.devito@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  3:21-CV-08735-WHA |
| Plaintiff, | SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND UBER TECHNOLOGIES, INC. |
| v. | |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA

## I.      INTRODUCTION

1.      This Settlement Agreement (the "Agreement") is made and entered into by and among the United States of America and Uber Technologies, Inc. ("Uber") (collectively, the "Parties").

2.      There is now pending in the United States District Court for the Northern District of California a civil action styled *United States of America v. Uber Technologies, Inc*., No. 3:21-cv-08735-WHA (N.D. Cal.) (the "Action").

3.      The United States and Uber agree that it is in the Parties' best interest, and the United States believes that it is in the public interest, to resolve the Action on mutually agreeable terms.

4.      It is expressly understood and agreed by the Parties that this Agreement represents a settlement and compromise of disputed claims, that factual and legal issues remain in dispute, and that the Court has made no final determination in the Action.

5.      The Parties voluntarily enter into this Agreement, as set forth below.

## II.     LEGAL STANDARDS AND THE UNITED STATES' FACTUAL ALLEGATIONS

6.      Title III of the Americans with Disabilities Act (ADA) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5; *see also* 42 U.S.C. § 12181(10) (defining "specified public transportation").

7.      These private entities must ensure that adequate time is provided to allow individuals with disabilities to board or disembark from the vehicle. 49 C.F.R. § 37.167(i); *see also* 42 U.S.C. § 12184(a).

8.      These private entities that provide taxi services must not discriminate against individuals with disabilities by charging higher fares or fees for carrying them and their equipment. 49 C.F.R. § 37.29(c). "For purposes of this section, other transportation services that involve calling for a car and a driver to take one places … are regarded as taxi services." 49 C.F.R. pt. 37, app. D § 37.29; *see also* 42 U.S.C. § 12184(a).

9.      These private entities must make reasonable modifications to policies, practices, and procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12184(b)(2)(A); 49 C.F.R. § 37.5(f).

10.     In the Action, the United States alleges that Uber is a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce, and that it provides specified public transportation services as that term is defined in the ADA, and so is subject to the requirements of Title III of the ADA and its implementing regulations. The United States further alleges that Uber violated the ADA's statutory and regulatory provisions by charging a wait time fee on rides where a rider with a disability needed more

than two minutes to board an Uber vehicle because of disability.  The United States also alleges that Uber's actions amount to a pattern or practice of discrimination and that the alleged discrimination against a person or group of persons raises an issue of general public importance.  *See* 42 U.S.C. § 12188(b)(1)(B).

11. Uber denies that it is subject to the provisions of the ADA governing entities primarily engaged in the business of transporting people, denies that it is such an entity, denies that it provides specified public transportation as that term is defined in the ADA, denies that it is an operator of a demand-responsive transportation service within the meaning of the ADA, and denies that it provides taxi services.  Uber further denies that it has discriminated against individuals who have filed complaints with the U.S. Department of Justice or other individuals who allege that they were subject to discrimination, denies that it has violated any federal, state, or other laws, and denies that it has violated the letter or spirit of the ADA or its regulations in any way, related to wait time fees or otherwise.  Uber asserts that drivers on the Uber platform are independent third parties and not Uber employees, and that drivers' vehicles are not "Uber vehicles."  By entering into this Agreement, Uber does not admit and specifically denies any wrongdoing, liability, or fault.

## III.   DEFINITIONS

12. <u>DOJ Complainants.</u>  "DOJ Complainants" is defined to mean individuals who communicated with the U.S. Department of Justice (DOJ) regarding Uber's wait time fees prior to the Effective Date and whom the United States identifies as eligible to share in the payments described in Paragraphs 40 and 43.

13. <u>Effective Date.</u>  "Effective Date" is defined to mean the date of the last signature on this Agreement.

14. <u>Qualified Settlement Fund.</u>  "Qualified Settlement Fund" is defined to have the meaning set forth in United States Treasury Reg. § 1.468B-1, to the extent applicable to the terms of this Agreement.

15. <u>Uber Cash.</u>  "Uber Cash" is defined to mean a payment method within the Uber app that can be used to make purchases on the Uber and Uber Eats apps, having a $1.00 Uber Cash to $1.00 U.S. Dollar equivalent value of U.S. currency.

16. <u>Uber Complainants.</u>  "Uber Complainants" is defined to mean the 1,159 persons, excluding any persons also identified as DOJ Complainants, whom Uber has previously identified to the United States as having communicated with Uber about incurring a wait time fee at the start of a trip and indicating that a disability contributed to their inability to board a vehicle within two minutes and the wait time fee being charged.

17. <u>Wait Waiver Accounts.</u>  "Wait Waiver Accounts" is defined to mean the accounts of approximately 65,000 users of Uber apps who, as of May 12, 2022, had self-certified through the Waiver Program, but excluding the accounts of all DOJ Complainants and all Uber Complainants, even if those riders are part of the Waiver Program.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                        1

18. <u>Waiver Program.</u>  "Waiver Program" is defined to mean the program initiated by Uber on or about November 8, 2021, under which individuals with active rider accounts on the Uber app can self-certify that they, or someone with whom they travel frequently, have a disability within the meaning of the ADA (42 U.S.C. § 12102 and 49 C.F.R. § 37.3), and that the disability impacts the individual's or their companion's ability to board a vehicle at the start of a trip before a wait time fee starts accruing, and so obtain a prospective waiver of all future wait time fees for the account.

19. <u>Web Accessible.</u>  "Web Accessible" is defined to mean conforming with the Web Content Accessibility Guidelines 2.1, Level AA (June 5, 2018), published by the World Wide Web Consortium, available at www.w3.org/TR/WCAG/ ("WCAG 2.1 AA").  As used in this Agreement, WCAG 2.1 AA incorporates the Level A and Level AA Success Criteria.

## IV.   RELEASE

20. Except for the obligations and rights created by the Agreement, the United States agrees to release and forever discharge Uber, and its officials, employees, agents, subsidiaries, predecessors, successors, assigns, and administrators, of and from any legal and equitable claims, actions, causes of action, suits, controversies, damages, injunctions, penalties, and demands under Title III of the ADA arising, before the Effective Date, out of factual allegations about Uber's wait time fees set forth in Paragraphs 19 through 57 of the United States' Complaint in the Action.

21. Within five days of the Effective Date, the Parties will file a joint stipulation for dismissal and proposed order for dismissal of the Action with prejudice, pursuant to Fed. R. Civ. P. 41(a), subject to reinstatement upon the United States' motion within two years of the Effective Date for the purpose of resolving a claim that Uber breached the Agreement.  To the extent the United States complies with the notice and good-faith dispute resolution provisions of Paragraph 77, and subsequently makes a claim of breach within two years of the Effective Date, Uber agrees not to contest the United States' ability to reinstate the Action to resolve that claim of breach, provided that the proposed reinstatement is limited to the claim for breach of the Agreement that was the subject of the United States' notice and good-faith dispute resolution.  Uber reserves all defenses to contest the claim of breach on the merits.

22. Consistent with Paragraph 9 of the Northern District of California's General Order 56 and Paragraph 21 of this Agreement, the joint stipulation and proposed order for dismissal will specify that this Court retains continuing and exclusive jurisdiction to enforce the terms of this Agreement for two years after the Effective Date and will include this Agreement as an Exhibit.  The joint stipulation and proposed order also will specify that each Party bears its own costs and fees.

23. In exchange for the release described in Paragraph 20, and conditioned on its denial of liability in Paragraph 11, Uber agrees to take the actions and provide the monetary and nonmonetary consideration specified below.

24. The Parties agree and acknowledge that this consideration by both Parties is adequate and sufficient.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                        2

## V.    ACTIONS UBER WILL TAKE

25.    Uber and its affiliates will continue to prohibit discrimination against riders based on disability.

26.    Uber shall maintain the Waiver Program for as long as it charges riders a wait time fee at the start of a trip that may result in charges to persons with disabilities who need more time to board due to their disability.  If Uber ceases to charge such a fee, Uber may at its sole discretion elect to modify or eliminate the Waiver Program.

27.    Except as provided in Paragraph 26, Uber will not make any material modification to the Waiver Program without giving the United States 30 days' notice and an opportunity to object to such modifications.  Uber and the United States agree to work in good faith to address any objection the United States might raise.

28.    For as long as the Waiver Program remains in effect:

   a.    Wait time fee waivers may be subject to verification and/or audit by Uber.  Any verification requests by Uber must be reasonable and narrowly tailored.  They must also be made in plain language and Web Accessible.  Verification requests shall be directed towards asking the account holder to substantiate that they or their frequent companion have a disability and how that disability affects their ability to locate and board a driver's vehicle.  Uber shall not require an account holder to disclose a specific medical diagnosis, provide medical documentation, or sign a medical release, but may require a description of the general nature of a rider's disability.  All requests made pursuant to this subparagraph will be made and reviewed by Uber personnel with appropriate training or knowledge of the ADA.

   b.    Uber reserves the right to, within reason, deny a waiver request or remove the wait time fee waiver indication from a rider's account either: (i) when a rider informs Uber, during or after submission of a self-certification, that they or their companion do not in fact or no longer have a disability; or (ii) when, following a request for substantiation as described in Paragraph 28(a), Uber determines based on objective evidence that a rider does not meet the eligibility requirements for a self-certification.

   c.    Uber will continue to make a description of the Waiver Program available within the Uber app, on Uber's U.S. website, and as part of an onboarding email for new riders in the United States in substantially the same form as that description appears on the Effective Date.  Such descriptions shall be in plain language and Web Accessible.

   d.    Within 90 days of the Effective Date, Uber will provide a mandatory training to all current members of Uber's Accessibility and Disability Team describing the Waiver Program and refund policy, instructing members of the Accessibility and Disability Team on how to assist riders in obtaining a refund and opting into the Waiver Program, and on the requirements and limitations for verification requests.  Uber will also provide this training during onboarding or orientation of all new members of the Accessibility and Disability Team during the term of this Agreement.  Uber customer support representatives who regularly respond to rider complaints will be trained to

route complaints related to disabilities or the Waiver Program to the Accessibility and Disability Team. The specific form and content of any such training shall be left to Uber's sole discretion. Upon request, Uber will provide counsel for the United States with a description, by job title, of the personnel who have received the training required by this Paragraph.

e.   Uber will continue to make available a U.S. Help Center node through which riders can opt into the Waiver Program in substantially the same form as the node appears on the Effective Date.

f.   Uber will include a prominent notice of the Waiver Program on Uber's U.S. website on the "Accessibility" page (https://www.uber.com/us/en/about/accessibility/), along with a link to the U.S. Help Center node through which riders can opt into the Waiver Program. Such notice shall be in plain language and must be Web Accessible.

g.   Uber will not share information regarding whether a rider's account is exempt from wait time fees with drivers and will not make such information visible to drivers on the Uber driver app.

29.   For six months from the Effective Date, Uber will maintain its campaign to notify riders of the Waiver Program, consisting of two notices that are in plain language and Web Accessible inside the Uber rider app, each providing one-click access to the self-certification page for the Waiver Program: (1) one notice that is prominently posted when the rider requests a trip and the driver is on their way, and (2) another notice in the Uber rider app in the location where Uber frequently posts other messages to riders (the "Uber hub") that will remain available in the Uber hub for 180 days.

30.   Uber will ensure that the Uber app provides riders with disabilities a Web Accessible means to request a refund of wait time fees assessed at the start of a trip. Uber will continue to have a policy of granting such refund requests where the rider requests a refund within 30 days of the imposition of the wait time fee and indicates that they needed extra time due to a disability.

31.   Upon request and in any event no more frequently than every 120 days after the Effective Date until two years after the Effective Date, Uber will conduct a reasonable search for and provide to counsel for the United States: (1) any written complaints from riders indicating that they completed the certification to participate in the Waiver Program but are still being charged wait time fees, if any such complaints exist and can be reasonably located; (2) complaints from riders indicating that they requested a refund of a wait time fee within 30 days of incurring that fee and noted that the fee or their complaint was related to a disability, but did not receive a refund, if any such complaints exist and can be reasonably located; (3) the number of requests for verification to participate in the Waiver Program that Uber has made under Paragraph 28(a) of the Agreement, if any exist; (4) the number of requests for wait waivers that Uber has denied based on a request for verification to participate in the Waiver Program made under Paragraph 28(a) of the Agreement, if any exist; and (5) all complaints related to requests for verification to participate in the Waiver Program made under Paragraph 28(a) of the Agreement, if any such complaints exist and can be reasonably located.

## VI.    THE FUND ADMINISTRATOR

32.    Within 28 days of the Effective Date, Uber will enter into a contract to retain Rust Consulting as the Fund Administrator ("Administrator").  Uber affirms that the Administrator is an independent third-party, not affiliated with Uber.  Uber will bear all costs associated with contracting and paying for the Administrator, and Uber's contract with the Administrator will require that the Administrator comply with the provisions of this Agreement as applicable to the Administrator and with all confidentiality and privacy restrictions applicable to the Parties in this matter, including the Protective Order entered in this Action (ECF Nos. 40-41).  Uber's contract with the Administrator will require the Administrator to work cooperatively with the Parties in the conduct of the Administrator's activities, including providing all information required under this Agreement to the Parties.  All information and data provided to the Administrator pursuant to this Agreement shall be used by the Parties and the Administrator only for the purposes of implementing this Agreement.  Uber's payment of any costs for the Administrator shall be deemed payments to the Uber Complainant Payment Account for purposes of the Qualified Settlement Fund.

33.    The Administrator will establish cost-free and accessible means for DOJ Complainants, Uber Complainants, and Wait Waiver Accounts to contact the Administrator and obtain information about the Agreement and their potential entitlement to relief, including through email, a toll-free number (and accompanying TTY text telephone number), and a Web Accessible fund-specific website ("Fund Website").  At least 30 days prior to making the Fund Website available to the public, the United States will be given access to the Fund Website to check whether it is Web Accessible.  Uber and the United States agree to work in good faith to address any accessibility issues the United States identifies before Uber makes the Fund Website available to the public under this Agreement.

34.    The Administrator will confer with the Parties and obtain their approval of any form written communications, other than the Exhibits to this Agreement, to be sent to the DOJ Complainants, Uber Complainants, or Wait Waiver Account holders, as well as any call scripts or automated phone messages.

## VII.    PAYMENTS TO DOJ COMPLAINANTS

35.    Within 28 days of entering into a contract with the Administrator, Uber shall deposit with the Administrator a total of $500,000 to compensate DOJ Complainants (the "DOJ Complainant Payment Account").  Within 7 days of depositing the money in the DOJ Complainant Payment Account, Uber will submit proof to the United States that the DOJ Complainant Payment Account has been established and the required sum deposited with the Administrator.  Uber will bear all costs of establishing the DOJ Complainant Payment Account, maintaining it, and issuing payments from it.

36.    The monies in the DOJ Complainant Payment Account at all times shall be deemed a Qualified Settlement Fund.

37.    The United States shall, in its sole discretion, decide what portion of the DOJ Complainant Payment Account to distribute to each of the DOJ Complainants.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                              5

38. Within 60 days of the Effective Date, subject to the Protective Order entered in this Action, the United States shall identify to Uber and the Administrator all DOJ Complainants, providing their first and last name and the email address and phone number used to establish their rider accounts (if known), along with a valid mailing address, and any other available contact information known or reasonably available to the United States, as well as the amount of money to be distributed to each DOJ Complainant from the DOJ Complainant Payment Account.

39. Within 10 days after the Administrator receives the names and contact information for the DOJ Complainants from the United States (on the "DOJ Complainant Notice Date"), the Administrator shall send the Release (attached here as Exhibit D), the DOJ Complainant Notice (attached here as Exhibit A), and an IRS Form W-9 via first-class, postage-prepaid U.S. mail and via electronic mail, to each DOJ Complainant.  The Release, DOJ Complainant Notice, and IRS Form W-9 sent by email must be Web Accessible.

40. Within 14 days of and subject to receipt of a DOJ Complainant's signed Release and completed IRS Form W-9, the Administrator shall mail such DOJ Complainant's payment in the form of a check sent via first class, postage-prepaid U.S. mail to each DOJ Complainant at their identified address.

41. At 75 days after the DOJ Complainant Notice Date, the Administrator will search for a current address, phone number, or other contact information and will promptly use that information to call or otherwise contact:

    a.    Any non-responsive DOJ Complainants and inform them that they must respond within 30 days of the Administrator's contact, and

    b.    Any DOJ Complainants who have not cashed their check.

42. At 60, 150, and 240 days after the DOJ Complainant Notice Date, the Administrator will provide a report to the United States and Uber specifying as to each DOJ Complainant whether (1) they have returned a signed Release or otherwise responded to the DOJ Complainant Notice and Release, (2) their DOJ Complainant Notice and Release were returned as undeliverable, (3) they have been sent a check, and (4) they have cashed a check.

43. At 310 days after the DOJ Complainant Notice Date, the Administrator will provide the United States and Uber with a final report, including the information specified in Paragraph 42.  On the same date, the Administrator will provide a calculation of the remaining balance in the DOJ Complainant Payment Account (the "DOJ Complainant Residual Amount"), which shall include payments made to DOJ Complainants that are returned or not cashed. The DOJ Complainant Residual Amount shall be distributed equally as Uber Cash among all DOJ Complainants with an active Uber account who previously released their claims.

44. DOJ Complainants who receive payment shall be solely responsible for any taxes they owe resulting from the payment they receive under this Agreement and will receive a Form 1099 from the Administrator for the payment made, which shall be sent to the DOJ Complainant's identified address, along with or after the check.  Applicable federal, state, and/or local taxes imposed on the DOJ Complainant Payment Account, if any, shall not be deducted from the

DOJ Complainant Payment Account or from any monetary award to DOJ Complainants. If the Administrator is required to pay any taxes imposed on the DOJ Complainant Payment Account, Uber shall fund such payments (either directly or by reimbursing the Administrator), which shall be treated as additional transfers to the DOJ Complainant Payment Account for purposes of the Qualified Settlement Fund.

## VIII.   PAYMENTS TO UBER COMPLAINANTS

45.   Within 28 days of entering into a contract with the Administrator, Uber shall deposit with the Administrator a total of $1,738,500 (the "Uber Complainant Payment Account"). Within 7 days of depositing the money in the Uber Complainant Payment Account, Uber will submit proof to the United States that the Uber Complainant Payment Account has been established and the required sum deposited with the Administrator.

46.   The monies in the Uber Complainant Payment Account at all times shall be deemed a Qualified Settlement Fund.

47.   Within 90 days of the Effective Date (on the "Uber Complainant Notification Date"), Uber will:

   a.   Send via email to each Uber Complainant the message set forth in the Uber Complainant Email Notice (attached here as Exhibit B), describing their eligibility to receive a distribution of cash or Uber Cash from a $1,738,500 fund in exchange for signing the Release (attached here as Exhibit D), instructing the Uber Complainant to respond within 90 days, and including a link to the Fund Website. The Release and an IRS Form W-9 will be attached to the email. The email, including links and attachments, must be Web Accessible.

   b.   Send a message via the Uber hub in the Uber app to each Uber Complainant with an active Uber account. That message will notify the rider of their eligibility for a settlement distribution, instruct the rider to respond within 90 days, and include a link to the Fund Website. The message, including links, must be Web Accessible.

48.   Uber will re-send the hub message and the Uber Complainant Email Notice, Release, and IRS Form W-9 to Uber Complainants who have not yet responded at 30 days and 60 days from the Uber Complainant Notification Date. Uber will instruct them to respond within 60 and 30 days, respectively.

49.   The Fund Website will be Web Accessible and all information presented there will be in plain language. The Fund Website will include Uber's and the U.S. Department of Justice's official logos, all of the information contained in the Uber Complainant Email Notice attached here as Exhibit B, an IRS Form W-9, and a copy of the Release attached here as Exhibit D. The Fund Website will allow Uber Complainants to choose whether to accept a distribution in U.S. dollars or Uber Cash in exchange for the Release, or decline relief under this Agreement. The Fund Website will instruct Uber Complainants who elect a cash distribution or Uber Cash on how to submit the signed Release and IRS Form W-9 electronically, by email, or by regular mail to the Administrator.

50. If the Uber Complainant accepts a cash distribution in exchange for the Release, they must also provide a mailing address where the check can be sent.  The Fund Website will instruct Uber Complainants who elect a cash distribution on how to provide their mailing address to the Administrator electronically, by email, or by regular mail.

51. At 45, 75, and 90 days after the Uber Complainant Notification Date, the Administrator will provide a report to the United States that will include a list, by Uber Complainant, showing whether each Uber Complainant has elected to release their claims or declined relief under this Agreement, and for those Uber Complainants who released their claims, their election between a check and Uber Cash, whether they have provided a mailing address, and the date of such elections.

52. At 75 days after the Uber Complainant Notice Date, the Administrator will search for a current address, phone number, or other contact information and then use that information to call or otherwise contact the non-responsive Uber Complainants and inform them that they must respond by a date no later than 120 days from the Uber Complainant Notice Date.

53. At 150 days after the Uber Complainant Notification Date:

   a. Any Uber Complainant who does not respond to the Administrator's efforts to contact them as required by Paragraph 52 of the Agreement will be deemed to have declined relief under the Agreement.

   b. The Administrator will provide to the United States a report that will include a list, by Uber Complainant, showing each Uber Complainant's election (or non-election) to release their claims and their election between a check and Uber Cash.

   c. Uber will provide to the United States: (i) a list of the Uber Complainants identified by an anonymous unique identifier; (ii) the number of times each Uber Complainant was charged a wait time fee; (iii) the total amount of wait time fees charged to each Uber Complainant; and (iv) the total amount of wait time fee refunds provided to each Uber Complainant.

54. At 210 days after the Uber Complainant Notification Date, the United States will provide to Uber and the Administrator a specification of the amount of money or Uber Cash to be distributed to each Uber Complainant, who elected to release their claims, from the Uber Complainant Payment Account.  The United States will determine in its sole discretion how to allocate the funds in the Uber Complainant Payment Account to Uber Complainants who elected to release their claims.  That allocation, however, must be based solely and exclusively on the rider information Uber provided as described in Paragraph 53(c).

55. At 240 days after the Uber Complainant Notification Date:

   a. The Administrator will send a check in the amount identified by the United States to each Uber Complainant who elected to release their claims, elected a cash payment, and provided a mailing address for a check and an IRS Form W-9.

b.   Uber will apply Uber Cash in the amount identified by the United States to the rider account of each Uber Complainant who elected to release their claims, elected payment by Uber Cash, and provided a completed IRS Form W-9.  At or around the same time, Uber will send each Uber Complainant who elected to release their claims and elected payment by Uber Cash a message through email and a link to a copy of the message through the Uber app, both of which shall be sent in a Web Accessible format.  The message will notify the rider of the specific amount of Uber Cash they received and contain a link to the Fund Website.  That message will remain available through the Uber hub for 180 days.  Uber will confer with the United States to reach agreement on the mutually acceptable content of the message prior to sending the message.

c.   The Administrator will return to Uber from the Uber Complainant Payment Account an amount of U.S. Dollars equal to the amount of Uber Cash to be distributed to Uber Complainants as described in Paragraph 55(b).

56.   Within 30 days of mailing the checks as described in Paragraph 55(a), the Administrator will provide a declaration attesting that the checks and accompanying notices have been mailed to Uber Complainants.  Within the same 30 days, Uber will provide the United States with a declaration attesting to the application of Uber Cash and delivery of the required notices to Uber Complainants who elected to release their claims and so elected, and to Uber Complainants who elected to release their claims but did not choose a method of payment, as described in Paragraph 55(b).

57.   Within 150 days after the Administrator sends the checks to the Uber Complainants as described in Paragraph 55(a), Uber will send a message via email and a message in the Uber app informing all Uber Complainants who elected cash but have not yet cashed their checks that they have 30 days remaining to cash their checks.  The message must be in plain language and Web Accessible.

58.   Any funds in the Uber Complainant Payment Account that remain undistributed 210 days after the Administrator sends the checks to Uber Complainants as described in Paragraph 55(a), and Uber applies the Uber Cash as described in Paragraph 55(b), shall be deemed the Uber Complainant Payment Account Residual.  The Uber Complainant Payment Account Residual shall first be applied to pay invoices of the Administrator to defray the cost of the services provided by the Administrator under this Agreement.  Any amount remaining in the Uber Complainant Payment Account Residual after application to the Administrator's invoices shall be distributed equally as Uber Cash among all Uber Complainants with an active Uber account who previously released their claims.  These Uber Complainants will not be required to provide any further release in exchange for this distribution of Uber Cash.

59.   Within 30 days after the final distribution of funds remaining in the Uber Complainant Payment Account, as described in Paragraph 58, the Administrator will provide the United States and Uber with a final report, including the information specified in Paragraphs 51 and 53, and Uber will provide the United States with a declaration attesting to the application of Uber Cash as described in Paragraph 58.

60.    Uber Complainants who receive payment shall be solely responsible for any taxes they owe resulting from the payment they receive under this Agreement and will receive a Form 1099 from the Administrator for the payment made, which shall be sent to the Uber Complainant's identified address and/or email address, along with or after the check or Uber Cash. Applicable federal, state, and/or local taxes imposed on the Uber Complainant Payment Account, if any, shall not be deducted from the Uber Complainant Payment Account or from any monetary award to Uber Complainants.  If the Administrator is required to pay any taxes imposed on the Uber Complainant Payment Account, Uber shall fund such payments (either directly or by reimbursing the Administrator), which shall be treated as additional transfers to the Uber Complainant Payment Account for purposes of the Qualified Settlement Fund.

## IX.    UBER CASH TO WAIT WAIVER ACCOUNTS

61.    Within 30 days of the Effective Date (on the "Wait Waiver Account Notification Date"), Uber will:

a.    Send via email to each rider with a Wait Waiver Account the message set forth in the Wait Waiver Email Notice (attached here as Exhibit C), stating the specific amount of Uber Cash each rider is eligible for (to equal twice the amount of wait time fees incurred over the lifetime of the account before May 12, 2022) in exchange for signing the Release (attached here as Exhibit D).  The Release will be attached to the email.  The Wait Waiver Email Notice will also instruct the recipient to respond within 180 days and contain a link to the Fund Website.  Uber will email the Wait Waiver Email Notice and the Release to each rider with a Wait Waiver Account who has not yet responded at 60 and 120 days from the Wait Waiver Notification Date, instructing them to respond within 120 and 60 days, respectively.

b.    Send a Web Accessible message via the Uber hub in the Uber app to all Wait Waiver Accounts.  The message will notify the rider of the specific amount of Uber Cash they are eligible for and contain a link to the Fund Website.  That message will remain available through the Uber hub for 180 days.  Uber will confer with the United States to reach agreement on the mutually acceptable content of the message prior to sending the message.

c.    Surface prominent banner notices, i.e. Ring banner notices, to Wait Waiver Accounts that appear when the rider requests a trip and the driver is on the way.  Such banners will include the information required by Paragraph 61(b) and will appear at least three times over the 180 days following the Wait Waiver Account Notification Date, to the extent the rider requests and is matched to a driver three times during that period.

d.    Add to the Uber Accessibility wait time fee node on the Uber website a notice informing riders that those who opted into the Waiver Program before May 12, 2022, may be eligible for a distribution of Uber Cash, including a link to the Fund Website, and providing a deadline for claims, which shall be 180 days from the Wait Waiver Account Notification Date.  Such notice shall remain on the website for 180 days following the Wait Waiver Account Notification Date.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                                    10

62. The Fund Website will allow riders with Wait Waiver Accounts to release claims electronically by typing their name and the date, to submit a signed release via email or mail, or to decline relief under the Agreement.

63. If the Administrator or Uber determines that an IRS Form W-9 is necessary to remit payment to any Wait Waiver Account, the Administrator will advise the rider of that requirement and provide a Web Accessible IRS Form W-9 to the rider, along with instructions for how to return the form to the Administrator. Payment may be conditioned on receipt of a completed IRS Form W-9.

64. Within 14 days of receiving a signed Release, and, if applicable, a completed IRS Form W-9, Uber will apply to the Wait Waiver Account Uber Cash equal in value to twice the amount of all wait time fees incurred over the lifetime of the Wait Waiver Account before May 12, 2022. At or around the same time, Uber will notify the Wait Waiver Account holder that the Uber Cash has been applied through email and a message via the Uber hub in the Uber app.

65. At 75 and 105 days after the Wait Waiver Account Notification Date, the Administrator will report to the United States the number of Wait Waiver Accounts that have elected to receive Uber Cash in exchange for the Release, the total amount of Uber Cash paid to those Wait Waiver Accounts, the number of Wait Waiver Accounts that declined to participate, and total amount of possible residual.

66. At 120 days after the Wait Waiver Account Notification Date, the Administrator will search for a current address, phone number, or other contact information and then use that information to call or otherwise contact the non-responsive Wait Waiver Accounts.

67. At 150 days after the Wait Waiver Account Notification Date, the Administrator will report to the United States on the efforts made to contact non-responsive Wait Waiver Accounts, the number of Wait Waiver Accounts that have elected to receive Uber Cash in exchange for the Release, the total amount of Uber Cash paid to those Wait Waiver Accounts, the number of people who declined to participate, and total amount of possible residual.

68. At 180 days after the Wait Waiver Account Notification Date, the difference between the amount of Uber Cash that has been distributed to Wait Waiver Account holders who released their claims and the total doubled amount of wait time fees incurred by Wait Waiver Accounts will be distributed equally as Uber Cash to all Uber Complainants and Wait Waiver Accounts who have active Uber accounts and previously elected to release their claims. No further release will be required by these Uber Complainants and Wait Waiver Accounts to get distribution of this residual. To the extent the Administrator determines these transfers would require an IRS Form W-9, the Administrator can request an IRS Form W-9 and condition payment on receipt of a completed IRS Form W-9.

69. Within 30 days after the final distribution of the residual funds, as described in Paragraph 68, the Administrator will provide the United States and Uber with a final report indicating the number of Wait Waiver Accounts who elected to receive Uber Cash in exchange for the Release, and Uber will provide the United States with a report indicating how much was distributed to each account and a declaration attesting to the application of that Uber Cash.

## X.   CIVIL PENALTY

70.   Within 30 days of the Effective Date, Uber shall pay a total of $50,000 to the United States as a civil penalty, under 42 U.S.C. § 12188(b)(2)(C)(i); 28 C.F.R. § 85.5 (adjustments for civil penalties); 49 C.F.R. § 37.11 (incorporating by reference 28 C.F.R. § 36.504(a)(3)(i)), as amended.  The payment shall be in the form of an electronic funds transfer pursuant to written instructions by the United States.  Payment of this civil penalty is not intended to be, and shall not be construed to be, inconsistent with Uber's denial of ADA coverage and liability as described in Paragraph 11.

## XI.   IMPLEMENTATION AND ENFORCEMENT

71.   All durations specified in this Agreement run from the Effective Date unless otherwise indicated.

72.   The Court before which the Action has until now been pending shall retain continuing and exclusive jurisdiction, pursuant to the Northern District of California's General Order 56, solely to enforce the terms of the Agreement for a duration of two years from the Effective Date.

73.   Failure by the United States or Uber to enforce any provision of this Agreement shall not be construed as a waiver of the United States' or Uber's right to enforce any provisions of this Agreement.

74.   If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall remain in full force and effect.

75.   A limited number of isolated instances of noncompliance with the Agreement's Web Accessibility requirements shall not constitute a material breach of this Agreement if those failures would not prevent a person with a disability from (1) completing the self-certification for the Waiver Program or providing any information required to obtain relief under the Agreement, or (2) accessing the substantive information Uber provides about wait time fees, the Waiver Program, wait time fee refunds, and a person with a disability's potential entitlement to relief under the Agreement.

76.   If Uber is unable to comply with the Agreement's Web Accessibility requirement in a particular, discrete circumstance, it may provide the United States with a written request for a limited exception, which the United States shall not unreasonably deny.  The request shall set forth the reasons limiting Uber's ability to comply with the Agreement's Web Accessibility requirement in the specific instance and the steps Uber will take to enhance accessibility.

77.   If the United States believes that Uber has violated any portion of this Agreement, the United States will give notice (including reasonable particulars) of the alleged violations to Uber. Uber must respond to this notice as soon as practicable, but no later than 30 days thereafter. The Parties will negotiate in good faith in an attempt to resolve any dispute.  If the United States and Uber are unable to reach a mutually acceptable resolution within 60 days of Uber's response, the United States may seek enforcement of this Agreement by seeking reinstatement of this Action as set forth in Paragraph 21.

78. As to any deadline specified in this Agreement, if Uber cannot meet the deadline specified, then Uber shall notify the United States as promptly as is practicable before the deadline of its inability to meet the deadline and the reasons why, and shall request a reasonable extension of time to a specific date.  The United States shall be reasonable in considering any requests to extend.

79. All documents and communications required to be sent to the United States shall be sent by overnight courier, secure file transfer, or, where practicable, by email to:

   ATTN: Cheryl Rost
   *United States v. Uber Technologies, Inc.* (DJ No. 202-11-409)
   Disability Rights Section
   Civil Rights Division
   United States Department of Justice
   4 Constitution Square
   150 M Street NE
   Washington, DC 20002
   cheryl.rost@usdoj.gov

80. A signatory to this document in a representative capacity for Uber is authorized to bind Uber to this Agreement.  A signatory to this document in a representative capacity for the United States is authorized to bind the United States to this Agreement.

81. This Agreement constitutes the entire agreement between the United States and Uber on this matter.  No other prior statement, promise, or agreement, either written or oral, made by any Party or agents of any Party, that is not contained in this written Agreement, including its Exhibits, is enforceable.

82. All settlement discussions, offers, counteroffers, and negotiations leading up to this Agreement are subject to Federal Rule of Evidence 408.

83. The Parties agree that, as of the Effective Date, litigation is not "reasonably foreseeable" concerning the matters described in the Complaint.  To the extent that either Party previously implemented a litigation hold to preserve documents, electronically stored information, or things, the Party is no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves either Party of any other obligations imposed by this Agreement.

84. The provisions of the Protective Order (ECF Nos. 40-41) remain in effect and applicable to all Parties throughout the term of this Agreement.

85. This Agreement does not purport to remedy any violations or potential violations of the ADA, other than as set forth in Paragraph 20 above.  Except as explicitly provided herein, this Agreement does not affect Uber's continuing responsibility to comply with all applicable federal, state, and local laws.

86. This Agreement shall be binding on the Parties.  Uber shall have a duty to notify all of its assigns and successors in interest of the existence and terms of this Agreement.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                           13

AGREED AND CONSENTED TO:

FOR THE UNITED STATES OF AMERICA:


STEPHANIE M. HINDS
United States Attorney
Northern District of California

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division


REBECCA B. BOND
Chief


DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102-3495
Telephone: (415) 436-7332
Fax: (415) 436-6748
david.devito@usdoj.gov

Date: July 15, 2022

KEVIN J. KIJEWSKI
Deputy Chief
CHERYL ROST (NJBN 020982011)
MATTHEW FAIELLA (NYRN 4437711)
DAVID W. KNIGHT (MDAN 0412140410)
MEGAN E. SCHULLER (CABN 281468)
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW – 4CON
Washington, DC 20530
(202) 616-5311
cheryl.rost@usdoj.gov
matthew.faiella@usdoj.gov
david.knight@usdoj.gov
megan.schuller@usdoj.gov

Date: July  15, 2022

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                                    14

FOR UBER TECHNOLOGIES, INC.:

_____*Elizabeth Coleman*_____

ELIZABETH A. COLEMAN
Vice President, Deputy General Counsel
Uber Technologies, Inc.
1515 3rd Street
San Francisco, California 94158


Date: July 11, 2022

# Exhibit A:
# DOJ Complainant Notice

## UBER WILL PAY YOU FOR PREVIOUSLY CHARGED WAIT TIME FEES
## <u>IF YOU RESPOND BY [Insert Deadline Date]</u>

  

In November 2021, the U.S. Department of Justice (DOJ) sued Uber Technologies, Inc. under the Americans with Disabilities Act (ADA) for charging a wait time fee when a rider needed more time to board a car because of disability.  Uber denies any wrongdoing, liability, or fault.  Uber and the DOJ have reached an agreement to resolve that lawsuit.

Under the agreement, **Uber will pay YOU $_____** if you sign the attached Release of Claims.  Also, Uber will continue to waive all future wait time fees for your account.  You can learn more about the waiver and wait time fee refunds at <u>Uber Help</u>.  The agreement between the DOJ and Uber is available at [**insert hyperlink**].

**TO GET THIS MONEY FROM UBER, BY [X date – approx. 90 days from date sent]**
**YOU MUST SEND:**

1.  the attached signed Release of Claims and completed IRS Form W-9, and

2.  your permanent address (where a check can be sent for up to 12 months)

to the Fund Administrator by email or mail to the following address:

E-mail:

Mail:

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                                   17

**If you do not sign the Release of Claims and return it by the deadline, then Uber will NOT pay you.** You should consult an attorney or tax preparer of your choosing about any legal or tax consequences of this payment from Uber.

If you have questions, you can contact the Fund Administrator at:

E-mail:

Phone:

TTY:

For more information about this agreement or the ADA, visit www.ada.gov or call the DOJ's toll-free ADA Information Line at 1-800-514-0301 (voice) or 1-800-514-0383 (TTY).

# Exhibit B:
# Uber Complainant Email Notice

**UBER WILL PAY YOU FOR PREVIOUSLY CHARGED WAIT TIME FEES
<u>IF YOU RESPOND BY [INSERT DEADLINE]</u>**

  

Because you contacted Uber about being charged a wait time fee for needing more time to board a vehicle on an Uber trip due to disability, you are eligible for a payment of at least $600 from a $1,738,500 fund under a recent agreement with the U.S. Department of Justice.  You can request this payment either by check or in Uber Cash, if you sign the attached Release of Claims and complete the attached IRS Form W-9.

**TO GET THIS CHECK OR UBER CASH, BY <u>[X date – approx. 90 days from date sent]</u>
YOU MUST SEND:**

1. the attached signed Release of Claims and completed IRS Form W-9,

2. choose whether you want to get a check or Uber Cash, and

3. if you pick a check, your permanent address (where a check can be sent for up to 12 months)

to the Fund Administrator by email or mail to the following address:

E-mail:

Mail:

You should consult an attorney or tax preparer of your choosing about any legal or tax consequences of this payment from Uber.

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                    20

Background:  In November 2021, the U.S. Department of Justice (DOJ) sued Uber Technologies, Inc. under the Americans with Disabilities Act (ADA) for charging a wait time fee when a rider needed more time to board a car because of disability.  Uber denies any wrongdoing, liability, or fault.  Uber and the DOJ have reached an agreement to resolve that lawsuit.  As part of the agreement, Uber will continue to waive wait time fees for your account.

You can learn more about this waiver and wait time fee refunds at Uber Help.  The agreement between the DOJ and Uber is available at [**insert hyperlink].**

For more information about this agreement or the ADA, visit www.ada.gov.

# Exhibit C:
# Wait Waiver Email Notice

**UBER WILL CREDIT YOU FOR PREVIOUSLY CHARGED WAIT TIME FEES**
**IF YOU RESPOND BY [INSERT DEADLINE]**

  

Because you have opted into Uber's waiver program regarding wait time fees for riders with disabilities, you are eligible for a payment in Uber Cash under a recent agreement with the U.S. Department of Justice, if you sign the attached Release of Claims.

**TO GET THIS UBER CASH, BY [X date – approx. 180 days from date sent] YOU MUST SIGN THE ATTACHED RELEASE OF CLAIMS AND SEND IT, BY EMAIL OR MAIL, TO THE FOLLOWING ADDRESS**:

E-mail:

Mail:

Or, you can visit [link to Fund Website] to fill out the Release form electronically.

You should consult an attorney or tax preparer of your choosing about any legal or tax consequences of this payment from Uber.

Background:  In November 2021, the U.S. Department of Justice (DOJ) sued Uber Technologies, Inc. under the Americans with Disabilities Act (ADA) for charging a wait time fee when a rider needed more time to board a car because of disability.  Uber denies any wrongdoing, liability, or fault.  Uber and the DOJ have reached an agreement to resolve that lawsuit.  As part of the agreement, Uber will continue to waive wait time fees for your account.

You can learn more about this waiver and wait time fee refunds at Uber Help.  The agreement between the DOJ and Uber is available at [**insert hyperlink].**

For more information about this agreement or the ADA, visit www.ada.gov.

# Exhibit D:
# Release

# RELEASE OF CLAIMS

Re: Civil Action No. 3:21-cv-8735-WHA

For and in consideration of the remedial relief made by Uber Technologies, Inc., under the provisions of the Settlement Agreement entered into by, and between, the United States and Uber, I, [full name], hereby release and forever discharge Uber, and its officials, employees, agents, subsidiaries, successors, assigns, and administrators, of and from any legal and equitable claims, actions, causes of action, suits, controversies, damages, and demands of disability discrimination arising under federal, state, and local law, before the entry of this Settlement Agreement, out of the factual allegations in the United States' Complaint in this civil action that Uber charged wait time fees to passengers who, because of disability, required more time to board a vehicle.

This Release constitutes the entire agreement between me and Uber on the subject of this Release.  This Release will be considered null and void in the event Uber fails to provide me the relief required by Paragraphs **X–X** of the Settlement Agreement.

I have read and understand this Release and execute it freely.  I have been provided access to a copy of the Settlement Agreement, and I acknowledge that I have been provided the opportunity to review the Settlement Agreement with an attorney and tax advisor of my choosing.

Signed this _____ day of _____, 2022.

_____

[NAME]

SETTLEMENT AGREEMENT
3:21-CV-08735-WHA                    26